## Hillman Land & Iron Company v. Commonwealth.

(Decided March 20, 1917.)

### Appeal from Franklin Circuit Court.

1. Corporations—License Tax on Authorized Capital Stock—Validity of.—Section 4189a of the Kentucky Statutes, providing that all corporations owning property in and doing business in this state, except those exempted by the statute, shall pay an annual license tax on the authorized capital stock of thirty cents on each one thousand dollars, is not unconstitutional, although the corporation has not issued all of its authorized stock.

2. Corporations—License Tax on Authorized Capital Stock—Validity of.—Under this statute where all the property owned by a foreign corporation was located in this state and all of its business transacted in this state, the state had the right to exact the license fee on the full authorized capital, although only a part of the capital stock had been issued.

3. Corporations—License Tax on Authorized Capital Stock—Validity of.—The state has the right to impose a reasonable license tax upon the authorized capital stock of a corporation, foreign or domestic, for the privilege of owning property in or doing business in this state, and a license tax of thirty cents on the one thousand dollars is neither arbitrary nor unreasonable.

BERRY & GRASSHAM and J. F. GORDON for appellant.

M. M. LOGAN, Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This appeal is prosecuted by a motion in this court from a judgment of the Franklin circuit court awarding to the Commonwealth a license tax of thirty cents on each one thousand dollars of the authorized capital stock of the Hillman Land & Iron Co., which is one million dollars.

The suit to recover this tax was brought by the Commonwealth under the authority of the provisions found in sections 4189a to 4189i, inclusive, of the Kentucky Statutes.

756 KENTUCKY REPORTS. [Vol. 174.

Section 4189a provides: "All corporations having capital stock divided into shares, organized by or under the laws of this or any other state or government owning property or doing business in this state, except foreign insurance companies, whether fire, life, accident, casualty or indemnity, foreign and domestic building and loan associations, banks and trust companies, and all corporations which, under this act or the general law, are liable to pay a franchise or license tax, shall pay to this state an annual license tax based upon its authorized capital stock, as hereinafter provided."

Section 4189b defines domestic and foreign corporations.

Section 4189c fixes the license tax to be paid and reads as follows: "Domestic and foreign corporations shall pay an annual license tax of thirty cents on each one thousand dollars of that part of their authorized capital stock represented by property owned and business transacted in this state, which shall be ascertained by finding the proportion that the property owned and business transacted in this state bears to the aggregate amount of property owned and business transacted in and out of this state.

"*Provided.* That such corporations may pay at said rate upon their entire authorized capital stock; and in that event they shall not be required to report as in subdivision number three of section four (4189d) hereof. And their failure so to report shall be deemed conclusive evidence that such corporation elects to pay upon its entire authorized capital stock, and it shall be its duty so to do, and the duty of the board of valuation and assessment so to fix its license tax."

Section 4189d provides that the corporation subject to the tax shall annually make reports to the Auditor giving the information described in the section, which includes, "The total amount of its authorized capital stock." This section further provides that "It shall be the duty of the board of valuation and assessment, from such reports and from such additional information it may require, to ascertain and fix that part of the authorized capital stock of such corporations upon which the license tax shall be based, as herein provided, and to fix the license tax of such corporation at the rate hereinbefore prescribed."

In the agreed state of facts it is stipulated that the "Hillman Land & Iron Company was incorporated under the laws of Missouri in 1901; its authorized capital

stock is one million dollars, divided into ten thousand shares of one hundred dollars each. Only seventy-five hundred thereof, or seven hundred and fifty thousand dollars, has been issued, the remaining twenty-five hundred shares, or two hundred and fifty thousand dollars, of said stock, has not been issued. The principal office of the Hillman Land & Iron Company is at the southwest corner of Ninth and Spruce streets, St. Louis, Mo. Its president, John W. Harrison, and all of the other officers and directors of said corporation reside at St. Louis, Mo. It owns no property without the state of Kentucky; its Kentucky office is at Grand Rivers, Kentucky. It pays state and county taxes upon all of its tangible property in Kentucky; its entire holdings consist of real estate (farm and timber lands) and live stock, all situated in the counties of Livingston, Lyon, Trigg, Marshall and Hopkins, in the state of Kentucky. It engages in no business and has not engaged in any business outside of Kentucky. The only business it engaged in during the year 1915 in Kentucky was farming and the raising of live stock by tenants upon the said lands. These lands are not used for anything but farming purposes, and the timber taken therefrom. The total value of its tangible property in Kentucky is four hundred thousand dollars. It has no tangible property elsewhere. The entire gross income in Kentucky for the year ending December 31, 1915, was $17,462.83; it has no income aside from this, and this was its entire gross income for said year.''

It will be observed that the statute imposes this license tax upon all corporations not expressly exempt from its payment by the statute, which own property or do business in this state, whether foreign or domestic, no discrimination being made between the two classes. Under this statute no account whatever is taken of the issued capital stock or the value of property owned or volume of business done, nor are the corporations subject to the tax required to report their issued capital stock. The license tax is imposed solely on the authorized capital, not the issued capital.

It will further be noticed that the statute requires the corporation to report the value of the property owned and used by the corporation in this state and out of this state, and the proportion of business transacted by it in this state as compared with the volume of business transacted by it in other states, and that when a corporation subject to the license tax owns property or transacts

business in this state and other states, the license tax on its authorized capital stock shall be such a sum as represents the value of its property located in this state and the amount of business transacted by it in this state in proportion to the property owned in other states and the business transacted by it in such states.

In short, the purpose of the statute was to treat corporations with perfect fairness by subjecting to the tax only such part of the authorized capital as was represented by property owned and business transacted in this state when property was owned or business done in another state; leaving exempt from the payment of the tax such part of its authorized capital stock as was represented by property owned or business done in other states. Under this statutory rule, when all the property owned by the corporation is located in this state and all of its business is transacted in this state, the amount of the license tax it must pay is arrived at by the simple method of ascertaining the amount of its authorized capital stock.

In American Tobacco Co. v. Com., 162 Ky. 716, we had before us a case involving a question very similar to the one presented in this record. In that case the American Tobacco Co. filed a report under the statute showing the amount of its issued capital stock and the amount of its authorized capital stock, and the board of valuation and assessment fixed the amount of the license tax on the issued capital stock, which was much less than the authorized capital stock. The Commonwealth, through one of its revenue agents, brought the suit to recover from the company the license tax on that part of its capital stock represented by the difference between the capital stock issued and the capital stock authorized, and the court, in sustaining the right of the Commonwealth to recover the tax claimed, said, in the course of the opinion:

"In fixing a license tax the law takes no consideration of its *issued* capital stock, and the appellant was not called upon to state it. But if it did show its *issued* stock, as well as its *authorized,* there was still but one thing for the board to do, and that was to make the calculation upon its *authorized* capitalization. . . . . The board, instead of performing its duty in the way directed by statute, made a mistake and took for its basis of calculation the capital stock *issued* by the company, instead of the stock which the law *authorized* it to issue."

The ruling in that case, if followed, controls the decision of this one, because the mere fact that it appeared in that case that the American Tobacco Co. owned property and transacted business in this state and owned property and transacted business in other states, did not of course affect the question of its liability to pay the tax upon its authorized and not upon its issued capital stock. The precise question decided in that case was that the company was liable for the payment of the tax upon its authorized capital stock as insisted by the Commonwealth and not merely upon its issued capital stock as claimed by the company. Arguments, however, are advanced by counsel for the land company that perhaps were not pressed on the attention of the court in the American Tobacco Co. case and so we will examine the soundness of these contentions.

The principal objection urged is to the method by which the statute undertakes to estimate the amount of tax that shall be paid, and it is said, which is true, that it ''wholly ignores the value of the property of the corporation, the amount of business it transacts, and the amount of its issued capital stock, placing its liability upon the basis of its authorized capital, a form of stock that has no value, no identity and no existence,'' and therefore the imposition of the tax on that part of the capital stock not issued is ''fictitious, unreasonable and arbitrary.''

The answer to this argument is that the license tax is not a tax on the property of the corporation or the value of its property. It is a license tax pure and simple on the volume of its authorized capital stock. What the authorized stock of a corporation may be is left entirely —unless limited by statute—within the discretion of the organizers or promoters of the corporation. The capital stock of the corporation, subject to statutory limitations, can be fixed at any sum and divided into as many shares as the organizers desire. If they choose to place the amount of authorized capital at a much larger sum than is needed to transact the business proposed to be or that is engaged in by the corporation, or at a larger sum than fairly represents the value of the property owned by the corporation or the volume of business transacted by it, that is a matter entirely within their discretion. But when the organizers do voluntarily fix what the amount of the capital stock shall be, then the legislature has the authority to say that the corporation, if it owns property in this and other states, or does business in this and

other states, must pay a license tax on such part of its authorized capital as is represented by the value of the property owned or the amount of business, transacted in this state, and if all its property is situated in this state and all its business done in this state, it must pay to this state wherever incorporated the statutory tax on its authorized capital. It is merely such a tax as the organizers or directors of the corporation invited when they voluntarily chose to fix the sum of its authorized capital stock. If the authorized capital stock is fictitious merely because it has not been issued or because it does not represent either business or property, this artificial or imaginary quality was voluntarily impressed on the stock by the act of the organizers or directors of the corporation. They and not the state are responsible for the condition that exists. The state undoubtedly has the power to impose a reasonable license tax upon all corporations, both domestic and foreign, for the privilege of doing business in this state, and in the exercise of this power it saw proper to exact with perfect equality from domestic and foreign corporations a moderate license tax upon the authorized capital stock for the privilege conferred in allowing them to own property and transact business in the state.

Counsel concedes the power of the state to exact this license tax on the issued capital stock, but insists that a license tax issued on the capital stock authorized, but not issued, is the exertion of an arbitrary power accomplished by the imposition of a tax on something that has no existence, and is therefore taking the property of the corporation without due process of law, in violation of the 14th amendment to the Constitution of the United States.

But, as we look at it, the exaction of this tax is neither upon a fictitious value nor is it arbitrary or taking property without due process of law. On the contrary, it is nothing more than the imposition of a reasonable privilege tax upon what the corporation voluntarily said was the amount of its authorized capital. A tax upon the authorized capital is no more a tax upon a fictitious value than would be a tax upon the issued capital stock that was not represented by either property or business. Capital stock issued but not represented by anything of value has no more substance than capital stock authorized but never issued. If the state has the power, and this is admitted, to impose a license tax upon the issued capital stock, we are unable to perceive why it has not the

same power to levy a reasonable privilege tax upon the authorized capital.

In its last analysis the question comes down to the power of the state to exact a license tax from corporations doing business in the state, and when this power is admitted, the only remaining question is, is the license tax an unreasonable or arbitrary one? Subjected to this test, plainly a license tax of 30 cents on the thousand dollars is neither arbitrary nor unreasonable.

The state, according to our view, is not limited to the assessment of a tax on the issued capital stock, or so much of it as is actually represented by property or business, although it might have thus limited the tax if it had seen proper to do so. As an easy, simple and constitutional scheme of taxation, it adopted the method of fixing the tax on the authorized capital without inquiring how much of that capital had been issued or what it represented. Under this method all corporations, foreign and domestic, are treated precisely alike and the sum that each must pay for the privilege of owning property in or doing business in this state is left to the organizers or directors of the corporation.

Wherefore, the judgment is affirmed.