## Robert L. Greene, Auditor, et al. v. Kentenia Corporation.

(Decided May 15, 1917.)

## Appeal from Franklin Circuit Court.

1. Corporations—Foreign Corporations—Exercise of Corporate Privilege in State.—A corporation is not a citizen within the meaning of Section 2, Article 4 of the Federal Constitution providing that the citizens of each state shall be entitled to all the privileges and immunities of citizens of other states, and it is competent for a state to impose the terms and conditions upon which a foreign corporation may come into its borders for the purpose of exercising its functions as a corporation, including the exaction from it of a tax as a consideration for its exercising its corporate privileges within the state.

2. Corporations—Foreign Corporations.—But the burdens laid upon, or the terms exacted from, a foreign corporation must not be greater than that exacted from a domestic corporation for exercising the same character of privilege.

3. Corporations—License Tax.—The license tax imposed by sections 4189a, 4189d, inclusive, of the Kentucky Statutes, is within the authority of the state to levy and collect in the exercise of its right to impose terms and conditions upon which a corporation may exercise its privilege as such, or engage in business as such, and such license tax is not a property tax, and the levying and collecting of it, after the corporation has paid its ad valorem tax, is not violative of either section 171 or 174 of the Constitution of Kentucky prohibiting double taxation, or as discriminating between citizens as to taxation.

4. Corporations—License Tax.—The license tax provided by the sections of the statute referred to above may be lawfully exacted of any corporation, foreign or domestic, who owns property in this state, or who uses property in the prosecution of its active business, so that if a corporation invests its capital in lands within this state, but does not in any manner operate the lands, it is liable for the taxes therein provided.

5. Corporations—Doing Business in State.—One who invests his money or capital in land with the expectation of it increasing in value is doing business in the place where the land is situated, although he may not be actively operating the land in any of the ways in which it is capable of being used.

6. Corporations—License Tax.—A Virginia corporation invested its capital in many thousands of acres of coal and timber land situated in Kentucky. It is not using the land in the way of mining operations or obtaining lumber or timber therefrom, or for agricultural purposes or otherwise, but it is held that it is liable for the license

tax imposed by the Kentucky Statutes, as found in above sections, when properly assessed.

`M. M. LOGAN, Attorney General, for appellant.

FRANK CHINN, HELM BRUCE and BRUCE & BULLITT for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

This suit was brought in the court below by the appellee (plaintiff), a Virginia corporation, against the Board of Valuation & Assessment in Kentucky, consisting of Robert L. Greene, Auditor, Sherman Goodpaster, Treasurer, and James P. Lewis, Secretary of State, to enjoin the board from certifying to the Auditor for collection the license tax provided by sections 4189a-4189d inclusive, Kentucky Statutes, which the board had determined was due the Commonwealth from the defendant under the provisions of those sections. The tax for the year 1915, was assessed at $3,000.00, as the corporation had an authorized capital of $10,000,000.00, and the mode of arriving at the amount of the tax, as well as the amount of it, are neither seriously questioned.

The complaint is that the plaintiff is not liable for any portion of the tax, because, it is insisted, that to collect it would be depriving it of its property without due process of law, and denying it the equal protection of the laws, contrary to the provisions of the Constitution of the United States, and that it would also violate sections 171 and 174 of the Constitution of Kentucky.

A demurrer filed to the petition was overruled, and the defendant declining to plead further, the injunction prayed for was granted, and, complaining of that ruling of the court, this appeal is prosecuted.

The part of section 171 of the constitution which it is insisted would be violated if the license tax was collected is: "Taxes shall be levied and collected for public purposes, only. They shall be uniform upon all property subject to taxation within the territorial limits within the authority levying the tax; and all taxes shall be levied and collected by general laws."

Section 174 of the constitution, which it is claimed the collection of the tax would violate, is:

"All property, whether owned by natural persons or corporations, shall be taxed in proportion to its

value, unless exempted by this constitution; and all corporate property shall pay the same rate of taxation paid by individual property. Nothing in this constitution shall be construed to prevent the General Assembly from providing for taxation based on income, licenses or franchises.''

From the provisions of the two sections of the Constitution quoted, it will be seen that the tax therein referred to and required to be equal is purely, solely and simply a property tax, and as to this character of tax it is therein provided that it shall not only be uniform upon all of the property subject to taxation, but in the last section quoted it is provided that such property tax shall be the same on the property of corporations as it is on property of individuals. So, the first question for determination is whether the tax here sought to be enjoined is a property tax within the meaning of those provisions of the constitution, or is it one ''based on licenses or franchises?''

In substantiation of plaintiff's contention, we are referred to the cases from this court of Livingston v. Paducah, 80 Ky. 656, and Standard Oil Co. v. Commonwealth, 119 Ky. 75. An examination of those cases, however, will show that they have no relevancy to the character of taxation here involved.

In the Standard Oil case the tax involved was a license tax imposed upon each oil depot in the state. It was determined that it could not be upheld as a property tax because that would be double taxation and discriminating against the owner of the oil depot as between him and other property owners in the state by requiring the former to pay not only an *ad valorem* tax upon the value of his oil depot, but an additional tax thereon, called in the statute a license tax. In other words, it was determined that in so far as that statute levied the tax for revenue purposes against the corporeal property (the depot), it could not be upheld, as it would constitute a double and therefore a discriminatory tax. The tax was upheld in that case, however, as a valid tax for regulating purposes, inasmuch as oil is both a dangerous substance and one deleterious to the health and safety of the community, and under the police power inherent in the state, its imposition was not unlawful.

In the other case of Livingston v. Paducah, which is referred to approvingly in the Standard Oil case, the

license tax was attempted to be imposed upon the owner of a vehicle who was not using it for hire, or in any other manner so as to reap a profit, but only for personal pleasure. It was determined that to permit the tax to be collected for such a purpose would be double taxation, as both it and the *ad valorem* tax which the owner paid upon the vehicle were taxes upon property. For manifest reasons, those opinions are sound, and if we had the same character of case presented to us here, the rule which they announce would be applicable, and plaintiff would be entitled to the relief which it seeks.

The fallacy of plaintiff's contention, and the error into which its counsel have fallen, lies in the fact that the purpose for which the tax here sought to be collected, is not to impose a property tax in any sense, but is the exaction of a sum by the Commonwealth of Kentucky of the corporate plaintiff in consideration of extending to it the privilege of exercising its corporate functions within the state. This is generally called a franchise tax. But plaintiff's counsel insist that Kentucky had no legal right or authority to impose a franchise tax upon their client because it did not extend or give to it the right to be a corporation (its corporate charter), as this was done by the state of Virginia, and under the rule laid down in the case of Louisville & Jeffersonville Ferry Co. v. Kentucky, 188 U. S. 383, it is incompetent for the Commonwealth in this case to tax such a franchise. Here again the plaintiff's counsel have fallen into the error of supposing that it is the character of franchise just referred to and discussed in that case which is sought to be taxed under the provisions of the sections, *supra,* of the statutes. That character of franchise, which is the privilege to be created and exist as a corporation, can only be given by the state or sovereignty under whose laws the corporation is organized, and manifestly no kind of charge can be exacted for thus giving the corporation birth by any other state or sovereignty except the one in which it was born. But the right thus given to be and to exist as a corporation is an entirely different thing from the right or privilege of exercising the functions of a corporation after it is brought into being. The latter may be performed in any state or sovereignty other than the one which brought the corporation into existence, provided they are within the charter or corporate

powers—but always upon terms.  The privilege thus to exercise the corporate functions, as authorized by its charter, in a state foreign to that of the corporation's birth is the franchise which is sought to be taxed by the defendant (board) in this case under the provisions of the statute, *supra,* and the amount of the tax constitutes the *terms* upon which the foreign corporation may exercise such privileges within this state.  The question, therefore, is, is it violative of any law, constitutional or otherwise, to impose such a license tax for that character of privilege?

It has from an early day been held that a corporation is not a citizen within the meaning of section 2, article 4 of the Federal Constitution, providing that: "The citizens of each state shall be entitled to all privileges and immunities of citizens of the several states." Citation to only a few authorities in support of this proposition (as they are all one way) will be sufficient. 8 Cyc. 1037; Orient Ins. Co. v. Daggs, 172 U. S. 557; Blake v. McClung, *idem,* 239; Security Mutual Life Insurance Co. v. Prewitt, 202 U. S. 246; Paul v. Virginia, 8 Wall 168; Phoenix Insurance Co. v. Commonwealth, 5 Bush 68, and Woodward v. Commonwealth, 9 Ky. Law Reporter 670.

These authorities hold that it is altogether competent for the state to decline and refuse to permit a foreign corporation from performing any of its corporate functions within the state, and they, therefore, necessarily determine that it is competent for the state to impose such terms as it pleases upon a foreign corporation as a condition precedent to its performing any of its corporate functions or exercising any of its privileges within that state.  In speaking of this question the Supreme Court in the case of Paul v. Virginia, *supra,* said:

"It was not intended by the provisions (of the Federal Constitution) to give to the laws of one state any operation in other states.  They can have no such operation except by the permission, express  or implied, of those states.  The special privileges which they confer must, therefore, be enjoyed at home, unless the assent of other states to their enjoyment therein be given."

As a corporation is a creature of the law of the state where it is created, it cannot carry that law with it into

a state where it sees proper to migrate in order to engage in the exercise of its corporate powers.

When the corporation does migrate into another state, it must conform to the laws of that state containing the terms under and by virtue of which corporate privileges may be exercised therein, before it can do so. A statute having to do with the question now under consideration was before the Supreme Court in the case of Hammond Packing Co. v. Arkansas, 212 U. S. 322, and in upholding what we have said, this language is found:

"Although it be conceded that the provisions of the statute cannot, consistently with constitutional limitations, be applied to an individual, such concession would not cause the act to amount to a denial of the equal protection laws. The difference between the extent of the power which the state may exercise over the doing of business within the state by an individual and that which it can exercise as a corporation furnishes a distinction authorizing a classification between the two."

The same doctrine was also considered in the case of American Smelting & R. Co. v. Lindsley, 204 U. S. 105, wherein the court in the course of its opinion said:

"The right obtained (by a foreign corporation in another state) was a right to enter the state and do business therein as a corporation. It was also subject by statute to the liabilities, restrictions and duties which were or might thereafter be imposed upon domestic corporations of like character."

In the cases of St. Louis S. W. Ry. Co. v. Arkansas, 235 U. S. 350; and Kansas City F. S. & M. R. Co., 240 U. S. 227, similar questions were before the Supreme Court, but there was also involved the question of imposition of burdens upon interstate commerce. It was determined in each of the cases that the tax involved did not do that, and that the state had a right to impose a privilege or franchise tax upon a foreign corporation when coming within its borders for the purpose of exercising its corporate privileges.

In the first case mentioned the court said:

"If the tax imposed by Act No. 112 of Ark. Laws, 1911, be regarded as a privilege, license or excise tax rather than as a tax upon property, it is nevertheless a valid exercise by the state of its right to prescribe the terms and conditions upon which corporations may transact an intrastate business within its borders."

In the opinion in the Botkin case, it is said:

"In the present case, the tax is not laid upon transactions in interstate commerce, or upon receipts from interstate commerce either separately or intermingled with other receipts. It does not fluctuate with the volume of interstate business. It is not a tax imposed for the privilege of doing an interstate business. It is a franchise tax—on the privilege granted by the state of being a corporation—and while it is graduated according to the amount of paid-up capital stock, the maximum charge is $2,500.00 in the case of all corporations having a paid-up capital of $5,000,000.00 or more. This is the amount imposed in the present case, where the corporation has a capital of $31,660,000.00. We find another ground for saying that a tax of this character, thus limited, is in no sense a tax imposed upon interstate commerce."

See also Society, Etc. v. Coite, 73 U. S. 571, 18 Law Ed. 897, as bearing upon the questions involved here.

The only constitutional requirement exacted of a state in extending this character of privilege to a foreign corporation is that when the foreign corporation gets into the state its burdens shall be no more onerous than are those of domestic corporations for exercising the same character of privilege. This rule is laid down in the Lindsley case, *supra,* wherein, upon this point, it is said:

"It was a clear contract that their liabilities, etc., should be the same as the domestic corporation, and the same treatment in that regard should be measured out to both. If it were desired to increase the liabilities of the foreign, it could only be done by increasing those of the domestic corporation at the same time and to the same extent."

But this principle of law has been before this court a number of times, receiving thorough consideration in the two cases of Castle's Admr. v. Acrogen Coal Company, 145 Ky. 591, and Hillman Land & Iron Co. v. Commonwealth, 174 Ky. 755.

In the Castle case, this court, addressing itself to this and other questions involved herein, said:

"And so, when a foreign corporation comes into this state, as did the Acrogen Coal Company, for the purpose of transacting business within this state, it subjects itself to all of the laws of this state applicable to domes-

tic corporations. A foreign corporation is not entitled to enjoy in this state any privileges or immunities that a domestic corporation cannot enjoy. . . . . Each state has the right for itself to prescribe the conditions upon which corporations (foreign) like the appellee company may transact business within its territory, and we have with much fairness put foreign corporations upon the same footing as domestic corporations.''

In the Hillman Land & Iron Company case the same license tax here involved was under consideration, but the primary question there was as to the method by which the Board of Valuation and Assessment arrived at the amount of the tax assessed against the foreign corporation, but the right of the state to impose and collect such a tax from a foreign corporation is fully sustained, the court, in the course of the opinion, saying:

''It will be observed that the statute imposes this license tax upon all corporations not expressly exempt from its payment by the statute, which own property, or do business in this state, whether foreign or domestic, no discrimination being made between the two classes. Under this statute no account whatever is taken of the issued capital stock or the value of property owned or volume of business done, nor are the corporations subject to the tax required to report their issued capital stock. The license tax is imposed solely on the authorized capital, not the issued capital. . . . The state undoubtedly has the power to impose a reasonable license tax upon all corporations, both domestic and foreign, for the privilege of doing business in this state, and in the exercise of this power it saw proper to exact with perfect equality from domestic and foreign corporations a moderate license tax upon the authorized capital stock for the privilege conferred in allowing them to own property and transact business in the state.''

It seems to be conceded by counsel for appellee that the state has the authority to levy the character of tax here involved upon domestic corporations, which is undoubtedly true, and it is difficult to understand, in the light of the authorities, *supra,* why it would not be equally authorized to levy the same tax upon foreign corporations seeking to exercise within its borders the same character of privilege as the domestic corporation. Section 202 of our constitution expressly prohibits the Commonwealth from allowing any foreign corporation to transact business within this state on more favorable terms or condi-

tions than a domestic corporation transacting the same or similar business.

It is insisted that this section of the constitution and the cases, *supra,* only prohibit the foreign corporation from "transacting" or "doing business" under more favorable terms than a similar domestic corporation, and it is argued that the plaintiff in this case is not *doing business,* but it is simply holding title to land within this Commonwealth.

Two answers may be made to this contention. One is that in the Hillman Land & Iron Company case this court said that it was competent for the state to impose the license tax "for the privilege of doing business in this state." In the other cases referred to, the same, or substantially the same, expression is used. Clearly, there is a distinction between the *privilege* of doing business and actually doing business. The one looks to preparation for engaging in business, and the other is the actual engagement in it. As an illustration, a corporation might desire to emigrate into a state for the purpose of making investments, or otherwise employ therein its capital and assets for profit, but before it may do so it must obtain the assent of that state to so operate its capital within its borders, and the obtaining of such assent is the procuring of the privilege to employ its assets in business. That kind of privilege is precisely the one which the state in this case is seeking to tax.

It seems to be conceded by counsel for plaintiff that if their client was actually engaged in actively using in any way the land which it has purchased and now owns in this state, consisting of many thousands of acres (valuable for coal and timber) that it would be competent for the state to demand and for it to pay the tax, as, according to counsel's interpretation, it would then be "doing business" in the state. But we do not construe that phrase to be confined to such a narrow meaning. When plaintiff invested its capital in the coal and timber land which it purchased in this state, it did so for one of two purposes—that of speculation by holding the land until it naturally increased in price, or to reap a profit from it by operating it either in the way of cultivation, mining, getting timber from it, or otherwise, so as to make it profitable. It avers in its pleading that it is doing neither of the latter, and therefore it is not doing business in this state. But, according to our conception, the land need not be in actual use in order to constitute *doing business.*

The average speculator in land (and there are many of them) if asked in what business he was engaged would answer: ''Speculating in land.''

One of the definitions of business given by Mr. Webster is ''buying and selling,'' and when one, either as an individual or corporation, puts his money into land rather than other investments, his act is necessarily a choice between the various means open to him by which he may make his money yield him a profit.

One of the definitions of ''invest,'' as given by Mr. Webster, is ''to lay out (money or capital) in business with the view of obtaining income or profit,'' and to employ capital by investing it in land and not using the land is, according to our view, doing business within the sense of that term as used in the statute providing for the tax sought to be enjoined.

Furthermore, a constituent part of the legal definition given by us in the case of Larkin v. Comlth., 172 Ky. 106, of ''doing business'' is: ''In other words, business does not mean dry goods, nor cash, nor iron rails and coaches. Business is not these lifeless and dead things, but the activities in which they are employed. When in motion, then the owners are said to be in business.''

As seen, plaintiff employed its capital by investing it in real estate situated within this state. It then put its capital in motion, and as long as it remains so invested it is doing business for its owner.

Lastly, it is insisted that the terms of the statute are not broad enough to include a mere investment in real estate, but we do not agree with this contention. Section 4189c speaks of ''property owned and business transacted in this state,'' and section 4189d, which makes provisions for ascertaining the amount of taxes to be collected, in referring to the corporations from which it may be collected, says: ''Such corporations now owning property or transacting business in this state.''

The sections of the statute were construed in the Hillman Land & Iron Company case, *supra,* as referring to and including corporations owning property or doing business in the state. We therefore conclude that this contention of plaintiff's counsel is without merit.

Upon the whole case we find no legal objection to the imposition of the tax, and the judgment of the trial court holding to the contrary must be and it is reversed, with directions to overrule the demurrer to the petition and to proceed in accordance with this opinion.