## Craig, Auditor, et al. v. E. H. Taylor, Jr. & Sons.

(Decided June 17, 1921.)

### Appeal from Franklin Circuit Court.

1. Taxation—Tax on Whiskey Withdrawn—Property Tax.—An act imposing a so-called annual license tax of 50c per gallon on all

whiskey withdrawn from bond, or transferred in bond from the state to a point outside the state, upon every person engaged in the business of manufacturing or owning whiskey or storing of same in bonded warehouses within the state is not an occupation or license tax but a property tax and as such is contrary to section 171 of the Constitution.

2. Taxation—License Tax.—The mere right to own and hold property can not be the subject of excises since the levying of a tax by reason of ownership of property is to tax the property.

3. Taxation—Spirits in Bond—Occupation.—The mere right to own spirits or store same in bonded warehouses is not an occupation as that term is used in the Constitution.

CHARLES I. DAWSON, Attorney General, for appellants.

HAZELRIGG & HAZELRIGG for appellees.

OPINION OF THE COURT BY JUDGE QUIN—Affirming.

At its 1920 session the General Assembly of this state enacted a statute imposing a so-called license tax of fifty cents per gallon upon every person engaged in the business of manufacturing distilled spirits, and in the business of owning and storing such spirits in bonded warehouses in the state and in removing same therefrom for any purpose. (Acts 1920, chapter 13, p. 27.)

It is made the duty of the warehouseman to collect this tax, which, however, is not payable until the liquor is removed from bond or is transferred under bond out of the state.

For a number of years prior to war time prohibition appellee was engaged in the manufacture, storage and sale of bourbon whiskey. Through the sale and delivery of warehouse receipts appellee disposed of all the liquor made by it, but in warehouses which it maintains it is holding a vast quantity of whiskey for its customers. It likewise maintains a bottling house for the purpose of bottling such of the goods in storage as may be desired by the owners.

In this action it was sought to enjoin appellants from the collection of the tax imposed under the act aforesaid. Upon final hearing the circuit court held the act to be unconstitutional and void and perpetually enjoined the enforcement of same.

Of the many points ably briefed by counsel we deem it necessary to consider but one, viz.: whether the tax is an occupation or a property tax. The determination of this question disposes of the appeal, It is conceded by appel-

lants that as an *ad valorem* tax it cannot be sustained, and though called an annual tax it was not intended to be such.   Unless, therefore, we conclude it is an occupation or excise tax the judgment below must be affirmed.

It is the contention of appellants· that the legislative purpose was to impose one occupational tax on the entire business of distilling, owning, storing and removing whiskey from bonded warehouses.   All the liquor affected by the present action was distilled prior to 1920, but it is argued that this in no wise affects the validity of the act.   If not a tax on the one occupation · of distilling, owning and storing in bonded warehouses, it is nevertheless, says counsel, sustainable as a tax on the business of owning and storing.   In the brief it is said that whiskey is stored for certain definite purposes, such for example as to permit it to age so that it might be bottled in bond; to have it cared for by some responsible person and to enable the owner to defer the payment of government taxes until the goods are withdrawn from storage.

Section 181 of the Constitution authorizes the imposition of license, occupation or excise taxes by general law.

In Greene, Auditor, v. E. H. Taylor, Jr. & Sons, 184 Ky. 739, 212 S. W. 925, this court had under consideration an act of May, 1917 (Ky. Stats., sec. 4212a), which provides that every corporation, etc., engaged in the business or occupation of manufacturing distilled spirits, and every owner or proprietor of a bonded warehouse in this state in which such spirits were stored should, in addition to the taxes then imposed by law, pay a license tax to the Commonwealth of two cents on every proof gallon of said spirits which is liable for tax to the Federal government.   The tax imposed by this act was held not to be a property tax but a license tax, regulated as to its amount by the volume of business done by the corporation for the privilege of engaging in the business of manufacturing double stamped spirits.

In Raydure v. Board of Supervisors of Estill County, 183 Ky. 84, 209 S. W. 19, a like conclusion was reached in regard to a statute imposing a license tax on the occupation of engaging in the business of producing oil.   And in Strater Bros. Tob. Co. v. Commonwealth, 117 Ky. 604, 78 S. W. 871, as to a license tax on tobacco factories where the natural leaf was converted by manufacture into cigars, cigarettes, etc.

The Supreme Court in Brown-Forman Co. v. Kentucky, 217 U. S. 563, 54 L. Ed. 883, held that a statute imposing a tax on persons engaged in rectifying whiskey was an occupation tax. But the tax imposed by the 1920 act has none of the incidents of an occupation tax.

The right to impose a license tax on the manufacture or distillation of spirits is not before us, since all the whiskey owned by appellants has been disposed of. We are concerned only with the question as to whether the ownership or storage of spirits in a bonded warehouse is an occupation as that term is used in our Constitution. As generally understood and defined occupation means the business in which one is employed, or perhaps it implies his trade or calling. Varied are the occupations in which one may be engaged. As illustrated by the authorities above referred to, the designation includes such as the manufacture of tobacco, the distillation and rectifying of whiskey, etc., etc. The mere right to own and hold property cannot be made the subject of excises since the levying of a tax by reason of ownership of property is to tax the property.

This principle has been applied to the mere ownership of timber. Thompson v. Krenter, 112 Miss. 165, 72 Sou. 891; and to devoting it to a turpentine orchard, the use for which it was most available. Thompson v. McLeon, 112 Miss. 383, 73 Sou. 193.

Greene v. Kentenia Coal Corporation, 175 Ky. 661, 194 S. W. 820, relied upon by appellants does not support a contrary doctrine. In that case appellee was held liable for the license taxes imposed by Ky. Stats., secs. 4189a and 4189d inclusive, where it had invested its capital in land in this state with the expectation of realizing a profit thereon. And this, notwithstanding the fact that the property was not being used for mining, timber or agricultural purposes. But the tax was sustained on the ground the state had the right to impose the terms and conditions upon which the corporation might exercise the privileges for which it was organized or engage in business as such and that the purchase and ownership of the property was in the prosecution of its active business. Furthermore the statutes referred to applied to corporations *owning property* or *doing business* in this state.

We have no such case here. The alleged business of owning and storing of whiskey in bond is not made taxable by the act, as whiskey stored in bond is free of the tax so long as it remains in the state, and any sale or dis-

position of whiskey in storage before its removal from bond or transfer under bond out of the state relieves the owner of the obligation to pay the tax.

Nor is the tax one imposed upon the business of owning, storing or removing whiskey from bond since the tax would be payable if the whiskey had been removed from the warehouse immediately after the approval of the act.

Then, again, the tax is not upon the business of removing liquor owned. A single transaction does not constitute engaging in business, within the contemplation of the statute, be it that of buying and selling whiskey or in the business of otherwise using it, as the tax is payable in respect to any lot of whiskey removed. Thus we find that the tax is in reality one upon the act of removal from bonded warehouses within the state.

But, as said in J. and A. Frieberg Co. v. Dawson, et al., Fed. (not yet published):

"The thing really taxed is the act of the owner in taking his property out of storage into his own possession (absolute or qualified) for the purpose of making some one of the only uses of which it is capable, i. e., consumption, sale or keeping it for future consumption or sale. . . . The whole value of the whiskey depends upon the owner's right to get it from the place where the law has compelled him to put it, and to tax the right is to tax the value."

The opinion in the foregoing case was that of three federal judges upon a hearing under sec. 266 of the Judicial Code, and in which the same act of 1920, involved here, was held to be unconstitutional. This conclusion was affirmed on appeal to the Supreme Court in Dawson, et al., v. The J. and A. Frieberg Co., U. S. Adv. Ops., 1920-21, p. 326.

It is significant that of those who have had occasion to construe this statute, two district judges, one circuit judge and the members of the Supreme Court, twelve judges in all, concur in the opinion that the tax is not sustainable as an occupation or excise tax and is none other than a tax on the property itself and as such is unconstitutional.

The question raised by this appeal being one of local law, our construction of same is controlling and while the opinion of such eminent authority as the foregoing is not binding on this court, it is highly persuasive, is entitled to great weight and the reasons given for the conclusions

reached accord exactly with the view entertained by us, considering it as an original proposition.

The character of the tax is determinable by its incidence, not its name. It cannot be made an occupation or license tax by calling it so. United States v. Emery, 237 U. S. Indeed, it is manifest the legislature considered that the tax was in fact a property tax, i. e., one upon the whiskey because in the emergency clause of the act we find:

"And whereas the liquor which they (persons embraced in the act) are handling and in which they are dealing is constantly in large quantities being removed from the bonded warehouses and disposed of without the state securing an adequate license tax thereon."

As a tax on the whiskey the act is concededly invalid, and as we are satisfied it cannot be construed as anything other than a tax on property it follows that the opinion of the lower court is correct and must be and is therefore affirmed.

Whole court sitting. Judge Sampson dissenting.

## Dissenting Opinion by Judge Sampson.

I dissent from the majority opinion of the court for the reason that I am thoroughly convinced that the tax involved is occupational and not *ad valorem* in its nature within the meaning of our Constitution and can and should be sustained.

This is the most important case from a financial standpoint with which the Commonwealth of Kentucky has had to do as a party. It involves directly and indirectly a tax amounting in the aggregate to more than $16,000,000.00, most of which would go to the building of highways in this state, a great and useful purpose.

It is always the duty of this court to sustain an act of the legislature if it can be done without violence to our fundamental law, and if an act is susceptible of two constructions, one of which will sustain it and the other annul it, this court is bound to give to the act that construction which will make it effectual. We have so held in the cases of Collins v. Henderson, etc., 11 Bush 74; Raglan v. Anderson, etc., 125 Ky. 141; Tinsley, Clerk v. Keown, 125 Ky. 141; Chesapeake Stone Co. v. Moreland, 126 Ky. 656; Hager, State Auditor, v. Walker, etc., 128 Ky. 12, and other cases. With this duty upon us should we seek to find a way to hold the act unconstitutional upon question-

able grounds or on grounds which can as well be resolved one way as the other? The Supreme Court of the United States, in the case of Dawson v. Frieburg Company, recently decided and to which reference is made in the majority opinion, says that this tax is a matter of local law which this court may or not sustain at its will, and whatever the decision here, will be conclusive on all other courts, including that august body.

This case involves the construction and constitutionality of an act of the last General Assembly of Kentucky entitled:

"An act imposing an annual license tax upon every corporation, association, partnership and individual engaged in the business of manufacturing distilled spirits known as whiskey or brandy or other species of double stamp spirits in this state, and upon every corporation, association, partnership and individual engaged in the business of owning and storing such spirits in bonded warehouses in the state, and in removing same therefrom for the purpose of sale, or for any other purpose; providing for monthly reports by distilleries and bonded warehousemen, for the purpose of ascertaining the amount of tax due; providing for monthly payments of the amount of license tax due; fixing a penalty for failure to make such monthly report and settlement; providing for the manner of distribution of the tax so collected; repealing all other license, franchise and excise taxes of the business covered by this act, and declaring an emergency to exist."

This act is now chapter 13 of the Acts of 1920.

The plaintiff, E. H. Taylor, Jr., & Sons, is a corporation and has heretofore been engaged in manufacturing distilled spirits known as double stamp spirits at its distillery in Franklin county, Kentucky. In connection with its distillery it owned and operated a distillery bonded warehouse, and the liquor manufactured by the distillery was stored in the bonded warehouse of the plaintiff, after which warehouse receipts were issued against same, and these warehouse receipts from time to time in the course of trade were sold to purchasers throughout the United States and much, if not all, of the liquor now stored in the distillery bonded warehouse of the plaintiff is owned by purchasers of these warehouse receipts. Plaintiff is still operating as a warehouseman and is bottling and shipping the liquor stored in said bonded warehouse on order of its customers from time to time. The record dis-

closes that the plaintiff has not abandoned its business as a distiller, but that it is its purpose at some future date and in more propitious times to resume the business of distilling whiskey and selling same for the purposes now permitted by law.

The plaintiff below in its petition assails the law on the ground: (1) That it is an unlawful exaction and exercise of legislative power.     (2) That the law is prohibitory and confiscatory in its character.     (3) That it provides for unequal taxation and violates sections 171 and 172 of the State Constitution.     (4) That the act is discriminatory in its nature and adds a greater burden on whiskey than on other personal property or property of like value, and a greater burden on the business and occupation taxed by the law than on other occupations of equal and like character or value.     (5) That the enforcement of the act will result in taking private property for public purposes, without just compensation and without due process of law, and will deprive the owner of such and the warehouseman in charge thereof of the equal protection of the law, in violation of the Fourteenth Amendment to the Constitution of the United States. We shall consider these five contentions in the order stated.

Inasmuch as the defendant below makes no question of the jurisdiction of a court of equity to issue an injunction herein, we pass this question and proceed to a consideration of the case on its merits.

Section 1 of the act is as follows:

"Every corporation, association, partnership and individual engaged in the business of manufacturing distilled spirits, known as whiskey or brandy or other species of double stamp spirits in this state; and every corporation, association, partnership and individual engaged in the business of owning and storing such spirits in bonded warehouses in this state, and in removing same therefrom for the purpose of sale, or for any other purpose, shall pay an annual license tax to the Commonwealth of Kentucky of fifty cents on every proof gallon of said distilled spirits so manufactured or stored in a bonded warehouse, or withdrawn from a bonded warehouse, or transferred therefrom under bond out of the Commonwealth of Kentucky."

Section 2 of the act deals with the making of reports by the warehouseman in whose place the liquor is stored.

Section 3 of the act is as follows:

"Every person, corporation, association or partner-
ship operating, owning or controlling such bonded ware-
houses, shall, at the time said reports herein provided
for are made, pay to the auditor of public accounts the
tax of fifty cents per proof gallon upon each proof gal-
lon of such spirits removed from the bonded warehouse
owned, controlled or operated by such person, corpora-
tion, association or partnership, or transferred under
bond out of this state, up to the date of making such re-
port; and for the purpose of securing the payment of the
license taxes herein provided for, the Commonwealth
shall have a lien on all such spirits stored in such bonded
warehouses, together with the other property of the
bonded warehousemen used in connection therewith; and
in all cases where the spirits so removed or transferred
are owned or controlled by another than the bonded
warehouseman, then the bonded warehouseman shall
collect and pay the tax due on such spirits so removed or
transferred under bond, and shall be subrogated to the
lien of the Commonwealth."

Section 5 of the act provides a penalty of not less than
five hundred dollars nor more than one thousand dollars
for persons subject to the act failing to report and pay
the tax as therein provided, and each day that the offen-
der is in default is declared by this section to be a sepa-
rate offense.

Section 7 of the act provides that the license tax im-
posed by the act in question shall be in lieu of all other li-
cense, franchise or excise taxes now imposed by law on
persons, corporations, partnerships or associations en-
gaged in the business covered by the act, and repeals all
laws in conflict with the new act, and especially chapter
5 of the acts of the special 1917 session of the General
Assembly. This act of the special 1917 session imposed
a license tax of two cents per proof gallon upon every
corporation, association, company, co-partnership or in-
dividual engaged in the business or occupation of manu-
facturing distilled spirits known as whiskey, brandy or
other species of double stamp spirits in this state, and on
every owner or proprietor of a bonded warehouse in
this state in which such spirits are stored, and the ware-
houseman was required to make the reports under that
law and collect and pay the tax. The privilege tax of
which complaint is made is not an unlawful exaction, nor
is it the result of an unlawful exercise of legislative

power, as contended by plaintiff, if there is warrant in our Constitution for such legislative action, and the tax was levied by that body in the way and manner authorized by the Constitution. So the first contention of plaintiff is one involving a construction of the Constitution of Kentucky, and an inquiry whether the terms of that instrument are broad enough to warrant a privilege tax such as here involved, and this we shall first consider.

A license or excise tax may be levied for one or both of two purposes: (a) Revenue; (b) regulation under the police power. It must be admitted that the state under its police power has the right to regulate any and all kinds of business, to protect and promote the public health, morals and welfare, subject only to the reservation of reasonable classification.   6 R. C. L. 217.

--(1) It is insisted by the appellant that this is an occupational or excise tax, and as such is authorized under section 181 of the Constitution of Kentucky. This section of the Constitution, in part, and in so far as applicable, is as follows:

"The General Assembly may by general law only provide for the payment of license fees on franchises, stock used for breeding purposes, the various trades, occupations and professions, or a special or excise tax."

Under this provision of the Constitution the legislature had the undoubted right to impose an occupational tax for the purpose of raising revenue; nor is the legislature required to impose a similar tax upon each and every occupation in which its citizens engage. It may tax some and exempt others. It may even go to the extent of classifying persons in the occupation taxed, and, if the classification is along reasonable and fair lines, it will not be objectionable. An occupational tax is one, not upon property, but upon the pursuit which a man chooses to acquire property and support himself or family. It is essential, however, to the constitutionality of the legislation and tax laid thereunder that it apply equally to all persons of a given class. The amount of a license tax is discretionary with the legislature, and may be fixed at any sum which will not be prohibitive. 25 Cyc. 612, 17 R. C. L., page 504. Owen County v. Cox & Co. 132 Ky. 743; Commonwealth v. Hazel, 155 Ky. 32.

In the case of Hager, Auditor, v. Walker, 128 Ky., p. 1, this court, in discussing the power of the legislature to tax occupations under section 181 of the Constitution, used this language:

"The authority to tax under this section is as far-reaching and as sweeping as language can make it. It would be difficult to find three words that cover wider fields of employment than 'trades,' 'occupations' and 'professions.' Under its authority to tax them the General Assembly has the power and the right to tax every business and every individual in the state—the merchant, trader and banker; the lawyer, minister and doctor; the mechanic and farmer.

"Indeed, it would be difficult to mention a person who has not some trade, occupation or profession and, if he has, the authority to tax him is granted and this without respect to the nature or character of the trade, occupation or profession, or whether it be humble or great, large or small. Nor does the Constitution undertake to place any limitation upon the amount of tax that may be imposed, although it may be conceded that if it shall be so unreasonable or arbitrary as to amount to a confiscation of property or a denial of the right to engage in a particular trade, occupation or profession, the courts will interpose to protect the class of persons affected from this oppressive burden, on the ground that it was a violation of the principles recognized and established in the Bill of Rights, declaring that all men have the right of seeking and pursuing their safety and happiness and the right of acquiring and protecting property. . . "

An occupation is a vocation, calling, trade or business which one follows, or which engages one's time or attention, in whole or in part, in an effort to procure a living for himself and family. 29 Cyc. 1344. Any pursuit, calling, business or course of dealing which one may, in whole or in part, adopt or pursue for gain, profit or a livelihood is an occupation within the meaning of our constitutional provision allowing the levy of a privilege tax on occupations, and the legislature has the discretion of singling out and designating any one or more of such pursuits as an occupation and subjecting it or them to a privilege tax or taxes. If one is engaged or occupied in whole or in part for gain or profit, in investing money in spirituous liquors, with a hope of an advance in the market price, can it be said that he has no occupation? Certainly, if he engages in the manufacture of such spirits, he has an occupation. And is it not likewise true if he invests money in it, stores it in a warehouse for the purpose of ageing, mellowing and perfecting it? The owner of whiskey may store it in a warehouse or not at

his option. He is not bound to do so. If he desires the privilege of storing and leaving it in a warehouse for the purpose of ageing and perfecting it, for safe-keeping, for higher prices, for the purpose of postponing the payment of the revenue and excise taxes, or for any or all of these or other reasons, he may, in the discretion of the legislature, be required to pay an excise tax for the privilege of so doing. While the mere right to acquire and own property is not generally held a subject of excise tax, any use of property so owned which is not an incident of such ownership may be the subject of a privilege tax. The storing of whiskey in a warehouse is not necessarily an incident of ownership of such property, for the owner may make other disposition of it, and the use or privilege of so storing the same may therefore be subjected to a privilege tax such as contemplated by this act. Granted that either of these things is such an occupation as may be subjected to a license or privilege tax, does it not follow that the legislature may put them all together as one business or occupation and levy a privilege tax thereon?

In discussing what constitutes a business or occupation subject to a license tax, we in the case of Greene, Auditor v. Kentenia Corporation, 175 Ky. 669, said:

"It seems to be conceded by counsel for plaintiff that if their client was actually engaged in actively using in any way the land which it has purchased and now owns in this state, consisting of many thousands of acres (valuable for coal and timber) that it would be competent for the state to demand and for it to pay the tax, as, according to counsel's interpretation, it would then be 'doing business' in the state. But we do not construe that phrase to be confined to such a narrow meaning. When plaintiff invested its capital in the coal and timber land which it purchased in this state, it did so for one of two purposes—that of speculation by holding the land until it naturally increased in price, or to reap a profit from it by operating it either in the way of cultivation, mining, getting timber from it, or otherwise, so as to make it profitable. It avers in its pleading that it is doing neither of the latter, and therefore it is not doing business in this state. But, according to our conception the land need not be in actual use in order to constitute doing business. The average speculator in land (and there are many of them) if asked in what business he was engaged would answer: 'Speculating in land.'

"One of the definitions of business given by Mr. Webster is 'buying and selling,' and when one, either as an individual or corporation, puts his money into land rather than other investments, his act is necessarily a choice between the various means open to him by which he may make his money yield him a profit."

So it appears that any investment made for gain or profit and which gain or profit is, in whole or in part, in the future, amounts to engaging in a business or occupation within the meaning of section 181 of our Constitution, and it is competent for the legislature to impose a license tax upon such business or occupation.

The Supreme Court of the United States in the case of Dawson v. Frieburg Warehouse Company, *supra,* says in approaching the consideration of the 50 cent tax on whiskey: "The question is whether, as to such this 50 cents a gallon tax is an occupational tax or is a property tax. The question is one of local law, so that a decision of it by the highest court of the state would be accepted by us as conclusive. But the validity of the statute does not appear to have been passed upon by any Kentucky court." By this opinion the Supreme Court of the United States expressly indicates and holds that the state of Kentucky has, through its legislative body, the right and power to lay an occupational tax on the acts set forth in the legislation under consideration, if our state courts should not find such legislation in contravention of our Constitution. The question is therefore put squarely up to this court to say whether the public policy of the state as declared by the law making department as regards the imposition of excise taxes shall be upheld. This court has the right and power, and if it did so it would be sustained, as I believe, both by reason and authority, to so construe and interpret the act as to give to it effect and turn into the treasury of the Commonwealth millions of dollars from the sale of an outlawed luxury which is now being marketed in defiance of law and without the payment of a commensurate revenue to the state. The Constitution of Kentucky says, "The General Assembly may provide for the payment of license fees on the various trades, occupations and professions, or a special or excise tax," and this covers and includes any and all businesses, callings, trades and professions to which man has or will devote his time and attention. There is no other. Certainly it is broad enough to and does cover and include the manufacturing, warehousing,

ageing, holding for speculation, sale or release of intoxicating beverages.

While the constitutional grant to the law-making body of power to impose a tax on "the various trades, occupations and professions" is broad and comprehensive yet this phrase is greatly enlarged by the further grant of the power by the same section to impose an excise tax, which is defined to be: One imposed upon an act, the engaging in an occupation or the enjoyment of a privilege, 26 R. C. L. 236; one laid on the manufacture, sale or consumption of commodities within a country, or upon certain callings or occupations, often taking the form of exactions for license to pursue them.  Pollock v. Trust Co., 157 U. S. 429.  Such taxes only look to a particular subject and levy burdens with reference to the act of manufacturing them, selling them, etc.  They are or may be as varied in form as the acts or dealings with which the taxes are concerned.  Knowlton v. Moore, 178 U. S. 41.

In the case of Booth v. Commonwealth, 130 Ky. 105, we said:

"'Excise' is a term of very general signification meaning tribute, custom, tax, tollage or assessment, and in recent years the courts have so enlarged its meaning as to declare that an inheritance tax is an excise tax."

Continuing we said in Hager, Auditor, v. Walker, *supra*:

"'We believe that it is competent for the legislature under this section (181 of the Constitution) by general law, for state purposes, as well as by a general law delegating the power to the municipalities mentioned, to divide trades, occupations and professions into classes and impose a different license fee upon each class that the trade, occupation or profession may fairly and reasonably be divided into.  To illustrate: Dealers in hardware might be divided into wholesale and retail dealers.  And trades, occupations and professions may be further classified according to the volume of business done by them.  Nor is the General Assembly, either by general law for state purposes, or general law in aid of or for the benefit of municipalities, required to impose the license fees that may be levied upon all trades, occupations and professions.  Any one or more trades, occupations and professions may be singled out for taxation and all the others not thus selected be exempted.  It will thus be seen that according to our construction of this section, it is susceptible of wide and varying application."

The cases, *supra,* also expressly hold that the uniformity of taxation provided for by section 171 of the Constitution of Kentucky applies to taxation on property, and not to license taxation authorized by section 181 of the Constitution, except that every member or pursuer of a trade, occupation or profession and every subdivision and classification thereof within the jurisdiction where the tax is imposed shall bear the same license tax as every other member or pursuer of that particular calling or business. Applying the rule just stated, it will be seen that if the tax is an occupational tax, under section 181 of the Constitution, then the claim of plaintiff that it imposes unequal taxation and that it is discriminatory in its nature and adds a greater burden on the business and occupation taxed than on other occupations of equal and like character or value, is without merit. We think it may be said without hesitation that if this law can be upheld as a valid exercise of legislative authority, it must be on the theory that it is an occupational or excise tax and not a property tax. Viewed as a property tax, it would undoubtedly violate sections 171 and 172 of the Constitution of Kentucky, providing for equality and uniformity in taxation and, moreover, to hold it to be a property tax would be to reach a conclusion wholly at variance with the plain purpose and expressed intention of the legislature.

It therefore becomes important to determine whether or not the legislation is justified under section 181 of the Constitution, above quoted. It is the claim of the plaintiff that the law in question singles out and taxes three separate and distinct occupations, namely: (a) distilling; (b) storing in bonded warehouses; and (c) removing whiskey from bonded warehouses; and that to tax the acts of owning and storing in bonded warehouses as an occupation, is undertaking to tax as an occupation something not contemplated as an occupation under section 181 of the Constitution, and that this attempt of the legislature to declare such acts to be an occupation is capricious and unreasonable. I do not concur in this view. The use of property of certain classes, especially luxuries such as whiskey, has always been considered a proper subject of excises. Hylton v. U. S., Dall. 171, U. S. (L. Ed.) 556; 26 R. C. L. 236. It is not ownership which is the subject of taxation, but the election during the taxing period of the owner to take advantage of one of the elements which are involved in ownership, namely, the right

to use it. 26 R. C. L. 236. Taking the whole act together, I am of the opinion that the legislature was attempting to impose an occupational tax upon the one entire business of manufacturing, storing and preparing distilled spirits for the market, and that it was not the intention of the legislature to tax the business of distilling as one occupation, storing in bond as another occupation, and removing from bond as a third occupation, except in cases where the act of manufacturing is completed but the liquor yet remains in storage unreleased from bond. It appears from a reading of the United States Statutes relating to the manufacture and warehousing of double stamp spirits that the manufacturer may or may not place his product in a warehouse, as he may deem best, provided he complies with the law in that respect. He is not, however, exempt from the privilege tax imposed by this statute under consideration, if he decides to dispose of his liquor without warehousing it, but if he does so dispose of it and pays the tax thereon to the state, as provided in this act, such liquor is not again subject to tax under this act, as only one tax of fifty cents on the gallon can be exacted. I think the real purpose of the legislation in question was to tax the one continuous business as one business, and leave to each of the agencies engaged therein the adjustment of the payment of same among themselves, the legislature for obvious reasons making the warehouseman the collector of the tax. Section 3 of the act in question clearly shows that it was the purpose of the legislature that only the one tax of fifty cents per proof gallon for the entire business should be collected, as it provides that the warehouseman at the time the reports showing the release of whiskey from the bonded warehouse are made shall pay to the auditor the tax of fifty cents per proof gallon upon each proof gallon of spirits removed from the bonded warehouse, owned or operated by such person, or upon each proof gallon of spirits transferred from such warehouse out of the state. There is nothing whatever in this section to indicate that it was the purpose of the law to require the warehouseman to collect or pay but the one fifty cent tax per gallon on all the whiskey that was placed in and passed out of his warehouse, regardless of by whom it was withdrawn. This construction of the law is in harmony with the construction of the act of the special session of 1917, which this law repeals. It is a matter of general knowledge in this state that under the

acts of the special session of 1917 only the one tax of two cents per gallon was collected upon each gallon of distilled spirits placed in and removed from bonded warehouses.

For the reasons indicated, and for the present withholding an expression of opinion as to the right of the legislature to tax as separate occupations the several acts of the bonded warehouseman, I am of the opinion that this tax was intended to be and fairly construed is a tax upon the entire business of distilling and preparing whiskey for market, which includes the business of storing in bonded warehouses, and as such is within the scope of section 181 of the Constitution, provided, of course, it is not prohibitory or confiscatory in its character.

(2) It is contended by the plaintiffs that if the tax is viewed as an occupational tax it is invalid and unconstitutional, for the reason that it is so large as to be prohibitory and confiscatory, by which is meant that the excise tax is so great as to amount to a virtual taking of the property of plaintiff and other owners of liquor without just compensation, or, if not that, then the excessiveness of the tax will so greatly increase the price of such liquor as to repel prospective purchasers and thus, in effect, prohibit the sale of the stored liquor and ruin the business or occupation taxed. It is well settled in Kentucky that while the power to impose a license tax on occupations and trades, under section 181 of the Constitution, is very comprehensive, it is not an unlimited power. Only those excise laws whose general operation is confiscatory and oppressive are unconstitutional. 26 R. C. L. 238. It is generally agreed, however, that the amount of a license tax is a matter in the discretion of the legislature, and courts will not review the action of the lawmakers unless an abuse of discretion is apparent. 17 R. C. L. 557; Hall v. Commonwealth, 101 Ky. 328; Tobacco Co. v. City of Hopkinsville, 174 Ky. 189. This doctrine is well stated in an opinion by the Supreme Court of Tennessee in the case of Knoxville, &c., O. R. Co. v. Harris, reported in 99 Tenn. 684, and 53 L. R. A. 930, wherein it is said:

"If the legislature has the legal right to impose a privilege tax the amount of the imposition is a matter within its discretion. 'Our only concern is with the validity of the tax; all else lies beyond the domain of our

jurisdiction.' Delaware Railroad Tax, 18 Wall 231, sub nom.; Minot v. Philadelphia W. & B. R. Co., 21 L. Ed. 896; California v. Central P. R. Co., 127 U. S. 1, 41, 32 L. Ed. 150, 157, 2 Inters. Com. Rep. 153, 8 Sup. Ct. Rep. 1073; Home Ins. Co. v. New York, 134 U. S. 594, 33 L. Ed. 1025, 10 Sup. Ct. Rep. 503; Jenkins v. Ewin, 8 Heisk, 477.''

The Supreme Court of the United States has held that it is no part of the function of a court to inquire into the reasonableness of the excise, either as respects the amount or the property upon which it is imposed. Patton v. Brady, 184 U. S. 608. And further, that though an excise tax is so onerous as to amount to a destruction of the business, or even if intended to do so, it is within the power of Congress and the courts have no power to revise its judgment. McCary v. U. S. 195 U. S. 27. In stating the rule in the case of Owen Co. v. Cox & Co., 132 Ky. 238, we said: ''The reasonableness of a license fee imposed as a tax is a question for the taxing power, and the courts will not interfere with its discretion unless the tax shall amount to a prohibition of a useful or legitimate business.'' The tax may not, however, be so excessive under our rule as to be prohibitive of the business, and this is the sole test. It is not prohibitive, and therefore not unconstitutional, if the business can be carried on with reasonable profit. A great deal of proof in the way of affidavits was introduced both by the plaintiffs and by the defendants on the hearing of the motion before the circuit judge, all of it being on the question of whether or not the tax in practical operation was prohibitive of the business taxed.

One of the reasons assigned by the plaintiff for contending that the tax is prohibitive involves a construction of the statute. It will be noted that in the title and in section 1 of the act the word ''annual'' is used in connection with the words ''license tax,'' and it is suggested by plaintiff that this language imposes a tax of fifty cents per proof gallon for each proof gallon of spirits stored in a bonded warehouse for each year same may remain in such warehouse. I can not agree with this construction of the statute. The act when taken as a whole clearly shows that the tax is not cumulative, increasing at the rate of fifty cents for each year the whiskey may remain in a bonded warehouse. In a sense the tax is an annual tax, and the amount of this annual tax is determined by multiplying the number of proof

gallons removed in any one year from bond by fifty cents per gallon. Had the legislature intended that the tax should be a cumulative one, at the rate of fifty cents per gallon per year, it would have provided in the law some means by which the Auditor, who is the collecting agent of the state, could have known how many years each gallon removed from bond had remained in bond and subject to the tax. To hold that the tax is an annual cumulative one would necessarily result in rendering the law invalid, on the ground that it would be prohibitive. The statute is clearly open to another and more reasonable construction, as pointed out above. It is the duty of a court, where a law is capable of two constructions, one of which will render it valid and the other invalid, to adopt that construction which will sustain the validity of the law, if such a construction does not do violence to the plain purpose of the legislature in enacting the law. The purpose of this legislation, manifestly, was twofold: (1) To regulate the business of manufacturing, storing and releasing liquors under the police power of the state; (2) to raise revenue. The construction I am putting upon it will, unquestionably, facilitate both these purposes. Moreover, the presumption is that an act of the legislature is within that body's rights under the Constitution. All reasonable intendment should be in favor to its fairness and justice. 36 American Reports 518; Gray on Taxation, page 720. Courts will not, therefore, adopt a construction of a statute which will invalidate it if there is another construction of which the statute is reasonably susceptible. 6 R. C. L. 78, 101; Standard Oil Co. v. Commonwealth, 82 S. W. 1020; 25 Cyc. 612.

As was said in the case of Weyman v. City of Newport, 153 Ky. 491:

"In the construction of ordinances the intention of the law-making department should be carried out, if this can be done consistently with the fair reading of the ordinance, and likewise an ordinance should be so construed as to sustain its validity when it is reasonably susceptible of this construction.

"In other words, if an ordinance is open to two constructions, one of which would uphold its validity and the other defeat it, that construction will be adopted which will sustain the validity of the ordinance."

I can not on the proof contained in the record hold that the tax is prohibitive of the occupation taxed. I think, taking the entire record on this point, it shows that the owners of liquor stored in bonded warehouses in Kentucky, whether they be distillers or whether they be holders of warehouse receipts, are able and have been able during all the time the law has been in effect to dispose of the product owned by them at a fair and reasonable profit.

It appears from the affidavit of G. J. Jarvis, tax clerk in the Auditor's office, that there have been removed from bond and the fifty cent tax collected on more than four million gallons of whiskey from the date the law become effective in March last up to the first day of December, 1920. The record further discloses that at the time the law became effective a fair and reasonable price for whiskey, when sold through the medium of warehouse receipts, was one dollar to one dollar and twenty-five cents per gallon, regardless of whether it was stored in Kentucky or elsewhere. It appears from the proof that the same price is now being obtained by the owners of liquor stored in Kentucky, when it is sold through the medium of warehouse receipts, the purchaser assuming and paying the tax. The profit to the owner is, therefore, the same now as before the imposition of the tax when it was not only fair but entirely satisfactory to the seller. It further appears that for whiskey stored outside of Kentucky the owners are realizing from one dollar and fifty cents to as high as two dollars per gallon for same, when sold through the medium of warehouse receipts. This would indicate that owners of liquor stored outside of Kentucky have taken advantage of the law to profiteer and secure for themselves an additional profit, but not with a purpose to nor have they put the owners of Kentucky stored liquors out of business. The price of whiskey is no longer an element in the sale. It will bring almost any price and the day is not far distant when the owner of Kentucky whiskey can sell his holding in legitimate channels at a price so high that a fifty cent tax on the gallon would be so small as not to be considered. According to common report it is now selling at from ten dollars to twenty dollars per quart or from forty to eighty dollars per gallon and the demand cannot be supplied even at these high prices. A fifty cent tax on the gallon would not affect or retard the sale in the slightest. The owner of

Kentucky stored whiskey is able to and does pass the tax on to the consumer without reducing his profit below the margin he was making at the time of the effective date of the law. The record further shows that by bottling his whiskey in bond, the owner of Kentucky stored whiskey can sell same in the market at a still larger profit, and that many of the owners of liquor are adopting this plan of disposing of their stock. The tax is, therefore, clearly neither prohibitory nor confiscatory of the business, as it affects the liquor now on hand.

Plaintiff insists, however, that while the tax may not be so heavy as to prevent the disposition of the stocks of liquor now on hand, that it will prevent it resuming business after the present stock has been disposed of; that whiskey can be manufactured in other states as cheaply as it can be manufactured in Kentucky, and that distilleries will start up in other states, and by reason of the fifty cent tax imposed by Kentucky plaintiff will be unable to meet outside distillers in price competition. It is difficult for the court to believe that the competition will be as keen in the whiskey business after the disposition of the stocks now on hand as it is now, but however that may be, the court could only speculate as to conditions which will then obtain. A court is not authorized to enter the realm of speculation in order to hold a law unconstitutional.

(3) The act does not, in the light of what has already been said, violate section 171 of our Constitution, which provides for uniformity of taxation, for, as we have already pointed out, it is not lacking in equality or uniformity if it places the same burden upon all persons or corporations embraced in a given class or subdivision thereof engaged in the designated business or occupation taxed. Weyman v. City of Newport, 153 Ky. 487; Smith v. Commonwealth, 175 Ky. 299. Moreover, it is generally held that the requirement of equality or uniformity does not apply to occupational or privilege taxation, but only to taxation of property or persons. Gray on Taxation, page 702.

(4) Neither is the statute open to the charge of discrimination against the business taxed, for a license tax is not discriminatory within the meaning of that prohibition if it does not arbitrarily or capriciously impose a different fee or license upon different members of the same class. The rule is well stated as follows in 17 R. C. L., pages 507, 508, 138 Ky. 738:

"Generally speaking, the state acting on occupations carried on within the state, may encumber some of them with a tax or license fee, and leave other occupations, dissimilar in tendency, though not in nature, to the free will of those who might be inclined to engage in them. It is essential, however, to the constitutionality of such tax laws that they apply equally to all persons of a given class. If the tax so applies it is sufficiently uniform and equal, but a tax which discriminates between different members of a class or exempts certain members of a class is void."

(5) Any tax is, in a sense, a taking of private property for public purposes, but, nevertheless, the right to levy and collect taxes inheres in sovereignty.

"Regulations respecting the pursuit of a lawful trade or business, being an exercise of the police power, are within the authority of the state, and form no subject for federal interferences unless they are so utterly unreasonable and extravagant in their nature and purpose that the property and personal rights of the citizen are unnecessarily and in a manner wholly arbitrarily interfered with or destroyed without due process of law, or unless other constitutional rights are impaired or destroyed."

It is argued for plaintiff that this is an *ex post facto* law and therefore unconstitutional, but this can not be, for only criminal statutes which relate back and impose penalties or create new crimes are *ex post facto* in their nature, within the meaning of the Federal Constitution.

"*Ex post facto* laws differ from retroactive laws. The latter, when imposing taxes or providing for their assessment and collection, are not forbidden by the Constitution; the former, in that Constitution, has reference to criminal punishment only; Kentucky Union Co. v. Kentucky, 219 U. S. 140, 31 Sup. Ct. 171, 35 L. Ed. 137."

If, as to the manufacture of whiskey, the act imposing this excise tax is retrospective, that of itself does not invalidate it.    12 Corpus Juris 1090, 127 Ky. 667; 120 Ky. 739.    Kentucky Union Co. v. Kentucky, *supra.* The occupation tax is that of manufacturing, storing and releasing whiskey as one complete business, and so long as any part of this operation is going on, the occupation is pursued and may be taxed.

I am not impressed with the contention that the penalties provided in the act for its violation are so excessive as to render the law invalid. The general rule is, that where a means is furnished by which a law may be tested in the courts without those subject to the penalties incurring the penalties, should the suit be decided adversely to the complaining party, penalties sufficiently heavy to effect the purposes for which the law was enacted may be imposed. St. Louis, L. M. & S. Railway Co. v. Williams, et al., 40 Sup. Ct. Rep. 71; Waddy v. Southern Railway Co., 235 U. S. 67, 59 L. Ed. 405; Gulf, Colorado & Santa Fe Railway Co. v. State of Texas, 246 U. S. 58, L. Ed. 574.

Section 162 of Kentucky Statutes provides as follows:

"When it shall appear to the Auditor that money has been paid into the treasury for taxes when no such taxes were in fact due, he shall issue his warrant on the treasury for such money so improperly paid in behalf of the person who paid the same. Nothing herein contained shall authorize the issuing of any such warrant in favor of any person who may have made payment of the revenue tax due on any tract of land, unless it is manifest that the whole of the tax due the Commonwealth on such land has been paid, independent of the mistaken payment, and ought to be reimbursed."

In the cases of Craig, Auditor v. Security Producing & Refining Company, 189 Ky. 565, and Craig, Auditor v. Frankfort Distilling Company, decided November 23, 1920, it was held that where taxes are paid under a void or unenforcible statute, and where the payment is made directly to the Auditor or directly into the state treasury, the person paying such taxes, by applying to the Auditor within two years from the date of payment, may have such taxes refunded. Under this statute, as interpreted by this court, a means is afforded of testing the validity of the law without incurring any of the penalties provided for in the act, and without the person paying the taxes sustaining any loss. The tax may be paid, and then demand made upon the Auditor that same be refunded, and, upon the failure of the Auditor to refund, a suit may be brought against the Auditor to compel him to issue his warrant for the taxes claimed to have been wrongfully collected, and in that suit the question of the constitutionality of the statute may be determined. This would not lead to a multiplic-

ity of suits, as the test could be made on one payment for the purpose of determining the law, and, if it should be determined in that case that the taxpayer is entitled to a refund, it would then be the duty of the Auditor to refund, not only the tax embraced in the suit, but upon proper demand he should refund any subsequent payments made under the same law, his duty to refund having been definitely settled, in the opinion in the case cited above. Aside from this, we are not prepared to say that the penalty provision of the act is an inseparable part of the act.

From the record we learn that Kentucky whiskey has been selling and removing from warehouses so actively that in the short time between the effective date of the act and the commencement of this litigation a very large amount passed to consumers. At the same rate we estimate that several million gallons of whiskey have been released from warehouses in Kentucky since the law took effect. On all this a tax of fifty cents per gallon is due amounting to millions of dollars. As the distiller and warehouseman passed the tax on to the consumer, and demanded and obtained in addition to the tax the same price for their goods which prevailed before the tax law was enacted, these millions of tax money now in the depositories subject to the orders of the court, belong either to the State of Kentucky as excise or to the consumers of the whiskey who paid the tax, and in no event to the distillers or warehousemen who have already received the full price of their goods, and only collected the funds now in litigation as taxes, and not as a part of the price of the goods sold. It follows that neither the money nor property of the distillers or warehousemen is either taken or threatened in this litigation.

Having reached the conclusion herein announced, I respectfully dissent from the majority opinion and insist that it must necessarily follow that plaintiff's claim that its property is being taken without due process of law and without just compensation is without merit. In my opinion the act under consideration is clearly within our Constitution and the tax valid as an occupational or excise tax and should be sustained.