## Metropolis Ferry Company v. Commonwealth.

(Decided June 8, 1928.)

### Appeal from McCracken Circuit Court.

1. Licenses.—Where 75 per cent. of gasoline purchased in another state and used in operating ferry between city in another state and ferry landing in state was used in state, such gasoline was

subject to tax, under Acts 1924, c. 120, sec. 1 (Ky. Stats., Supp. 1924, sec. 4224b1), and Acts 1926, c. 169, sec. 1 (Ky. Stats., Supp. 1926, sec. 4224b1).

2. Licenses.—Acts 1924, c. 120, sec. 1 (Ky. Stats., Supp. 1924, sec. 4224b1), Acts 1926, c. 169, sec. 1 (Ky. Stats., Supp. 1926, sec. 4224b1), imposing tax on gasoline sold, held not unconstitutional on ground that such tax violates Constitution, sec. 171, providing that taxes shall be uniform on all property of same class, since tax in question is an "excise tax" and not a property tax.

3. Commerce.—Acts 1924, c. 120, sec. 1 (Ky. Stats., Supp. 1924, sec. 4224b1), Acts 1926, c. 169, sec. 1 (Ky. Stats., Supp. 1926, sec. 4224b1), imposing tax on gasoline sold, held not unconstitutional as violative of commerce clause of Federal Constitution, as applied to gasoline used in operation of ferry between Kentucky and Illinois and therefore in interstate commerce, since there is nothing in the Constitution or laws of the United States which prevents state from taxing personal property employed in interstate or foreign commerce like other personal property within its jurisdiction, statute not being discriminatory, since tax is same on all gasoline whether used in interstate or intrastate commerce.

WHEELER & HUGHES for appellant.

W. A. BERRY for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CLAY—Affirming.

Section 1, c. 120, Acts 1924, now section 4224b1, Kentucky Statutes, Baldwin's 1924 Supplement, is as follows:

"That the word 'gasoline,' as used in this act, shall include all liquid fuels, including liquids ordinarily, practically and commercially usable in internal combustion engines for the generation of power and all distillates of, and condensates from, petroleum, natural gas, coal, coal tar, vegetable ferments, and all other products, so usable and sold in this commonwealth at wholesale, as the words 'at wholesale' are defined herein; provided, the term 'liquid fuels' shall include kerosene, fuel oil and crude oil only when used as a motor vehicle fuel upon any public highway. A state tax of three (3c) cents per gallon is hereby imposed on all gasoline, as defined herein, sold in this commonwealth at wholesale, as the words 'at wholesale' are hereinafter defined. No other excise or license tax shall be levied or assessed on gasoline by the state or any county, city, town or other district. The tax hereby

provided for shall be paid by the person, firm, association or corporation so selling gasoline, and shall be paid by said person, firm, association or corporation into the general fund of the state treasury in the manner and within the time hereinafter specified.  The words 'at wholesale,' as used in this act, shall be held and construed to mean and include any and all sales made for the purpose of resale or distribution or for use, and, as well, the gasoline furnished or supplied for distribution within this state, whether the distributor be the same person who so furnished the same, his agent or employer or another person; and also to mean and include any person who shall purchase or obtain such gasoline without the state and sell or distribute or use the same within the state.  Provided, that nothing herein contained shall be construed as authorizing or requiring the collection of such tax upon any gasoline after the same shall have been already once taxed under the provisions of this act.''

The above section was re-enacted in 1926, and the tax increased from 3 cents a gallon to 5 cents a gallon. Section 1, c. 169, Acts 1926, now section 4224b1, Kentucky Statutes, Baldwin's 1926 Supplement.

This is an action by the commonwealth against James R. Nelson and Clyde Randolph, partners doing business under the firm name and style of Metropolis Ferry Company, to recover taxes on gasoline purchased by them in Illinois and used in this state in the operation of their ferry. A recovery was sought at the rate of 3 cents a gallon from June 16, 1924, until February 21, 1926, as provided by the statute then in force, and at the rate of 5 cents a gallon from February 21, 1926, until September 1, 1926, as provided by the amendment of 1926.  The demurrer to the answer as amended having been sustained, and the demurrer to the petition having been overruled, and the defendants having declined to plead further, judgment was rendered in favor of the commonwealth.  The defendants appeal.

The facts admitted by the pleadings are these: Nelson and Randolph are citizens and residents of the state of Illinois, and their principal place of business is at Metropolis, in that state.  The situs of their personal property is also in that state.  All the gasoline purchased by them in the state of Illinois was used in the operation of their ferry between the city of Metropolis, in Illinois,

and the Metropolis Ferry landing, in McCracken county, Ky. 75 per cent. of the gasoline was used in the state of Kentucky.

It will be observed that the act provides that the words "at wholesale" shall be held to mean and include "any person who shall purchase or obtain such gasoline without the state, and sell or distribute or *use* the same within the state." As the gasoline, the taxes on which are sought to be recovered in this action, was all purchased in the state of Illinois, and it is conceded that 75 per cent. thereof was used in this state, the case falls within the statute. Therefore the only question to be determined is whether the act imposing the tax, in the circumstances presented, violates any provision of the state or Federal Constitution.

The principal ground on which the validity of the act is assailed is that a tax on the use of property is a tax on the property itself, and that such a tax violates section 171, the uniformity clause of our Constitution, providing in part as follows:

"Taxes shall be levied and collected for public purposes only and shall be uniform upon all property of the same class subject to taxation within the territorial limits of the authority levying the tax."

In support of this position it is insisted that the case is ruled by Dawson v. Kentucky Distilleries & Warehouse Co., 255 U. S. 288, 41 S. Ct. 272, 65 L. Ed. 638, and followed by this court in Craig, Auditor, v. E. H. Taylor, Jr., & Sons, 192 Ky. 36, 232 S. W. 395. Each of those cases involved the validity of an act imposing upon every person engaged in the business of manufacturing whisky, or in the business of owning and storing the same in bonded warehouses within the state, an annual license tax of 50 cents a gallon upon all whisky either withdrawn from bond or transferred in bond from Kentucky to a point outside the state. In discussing the question, the United States Supreme Court said:

"Nor is the alleged business of merely owning and storing whisky in bond made taxable. So long as the whisky is stored in bond within the state it is free of the tax. One may own and store the whisky for years in the hope of selling it at a profit, and yet be free from any obligation ever to pay this tax, if, before its removal from bond within the state, the

whisky is sold to another or if, while so owned, it is destroyed or forfeited to the government. Likewise the tax is not one imposed upon .the business of owning, storing, and removing whisky from bond. For the tax would become payable on account of whisky removed, although there had not been storage for any appreciable time; thus the tax would be payable on whisky if it had been removed from the warehouse immediately after the approval of the act. Nor is the tax one on the business of removing liquor owned. For the tax is payable in respect to any lot of whisky removed; and a single transaction does not constitute engaging in the business, be it that of buying and selling whisky or in the business of otherwise using it. In fact, the tax is one imposed upon each lot of whisky at the time it is removed from bond within the state."

It further said, "To levy a tax by reason of ownership of property is to tax the property," and therefore concluded that the tax in question was a property tax. The same view of the question was taken in Craig, Auditor, v. E. H. Taylor, Jr., & Sons, supra. In neither case was the right to tax the use of property involved. In Billings v. United States, 232 U. S. 261, 34 S. Ct. 421, 58 L. Ed. 596, there was involved the validity of section 37 of the Tariff Act of August 5, 1909, c. 6, 36 Stat. at L. 112, U. S. Comp. Stat. Supp. 1911, p. 1197, providing in part as follows:

"There shall be levied and collected annually on the first day of September by the collector of customs of the district nearest the residence of the managing owner, upon the use of every foreign-built yacht, pleasure boat or vessel, not used or intended to be used for trade, now or hereafter owned or chartered for more than six months by any citizen or citizens of the United States, a sum equivalent to a tonnage tax of seven dollars per gross ton."

In holding that this act was not repugnant to the Federal Constitution, the court, speaking through Mr. Chief Justice White, used the following language:

"It is to be observed that the provision deals with ownership and distinguishes between ownership and use, since it bases the tax not upon the former but upon the latter. From this it follows that

it is not ownership but the election during the taxing period of the owner to take advantage of one of the elements which are involved in ownership, the right to use which is the subject upon which the statute places the excise duty. In this view the fact of use, not its extent or its frequency, becomes the test, as distinguished from mere ownership, for that in the statutory sense could exist without use having taken place. The words of the statute under this construction were used in an everyday sense and not in a technical one; in other words, but convey the distinction without reference to nice analysis of the nature of things which is commonly conceived to exist between ownership and use. Let it be conceded that the ownership of property includes the right to use, plainly we think, as use and ownership are distinguished one from the other in the provision, the word 'use' as there employed, means more than the mere privilege of using which the owner enjoys, and relates to its primary signification, as defined by Webster: 'The act of employing anything or of applying it to one's service; the state of being so employed or applied.' If the use which arises from the fact of ownership without more was what the statute proposed, then it is inconceivable why the difference between use and ownership was marked in the provision and made the basis of the tax which it imposed. While this construction in this case leads to the same conclusion as does that which the court below affixed to the statute, that is, that it taxed the privilege of use, or, in other words, the potentiality of using involved in ownership, inherently there is this fundamental difference between the interpretation we give and that which the lower court adopted, since the privilege of use is purely passive (or subjective), a right which necessarily pertains to ownership and must exist where there is ownership, as one may not obtain ownership without acquiring the privileges of use which ownership gives. The other, on the contrary, that is, use in the statutory sense, although it arises from ownership, is active (objective), that is, it is the outward and distinct exercise of a right which ownership confers but which would not necessarily be exerted by the mere fact of ownership. The contention that inequality must be the result from making the tax depend upon

mere use, without reference to the extent of its duration, addresses itself not to the question of power, and is therefore beyond the scope of judicial cognizance. But it is to be observed that it may well have been that the character of the property with which the statute deals and the mere element of caprice as to its use and the uncertainties of the subject led to the fact of making the use alone the criterion as the wiser and juster method of operating equally upon all.''

Not only is the above reasoning persuasive but in the case of Bowman v. Continental Oil Co., 256 U. S. 642, 41 S. Ct. 606, 65 L. Ed. 1139, the United States Supreme Court sustained an act of the Legislature of New Mexico imposing an excise tax of 2 cents for each gallon of gas sold or used. In holding that the act did not violate the Federal Constitution or the uniformity clause of the Constitution of New Mexico, the court said:

"With the excise tax as imposed upon the use of gasoline by plaintiff at its distributing stations, in the operation of its automobile tank wagons and otherwise, we have no difficulty. Manifestly, gasoline thus used has passed beyond interstate commerce, and the tax can be imposed upon its use, as well as upon the sale of the same commodity in domestic trade, without infringing plaintiff's commercial rights under the Federal Constitution. Section 1, art. 8, of the state Constitution, invoked by plaintiff, reads: 'Taxes levied upon tangible property shall be in proportion to the value thereof, and taxes shall be equal and uniform upon subjects of taxation of the same class.' Clearly, the first part of this refers to property taxation. The tax imposed by the act under consideration upon the 'sale or use of all gasoline sold or used in this state' is not property taxation, but in effect, as in name, an excise tax. We see no reason to doubt the power of the state to select this commodity, as distinguished from others, in order to impose an excise tax upon its sale and use; and since the tax operates impartially upon all, and with territorial uniformity throughout the state, we deem it 'equal and uniform upon subjects of taxation of the same class,' within the meaning of section 1 of article 8.''

We are therefore constrained to the view that the tax in question is an excise tax and not a property tax. It follows that the act does not violate the uniformity clause of our Constitution.

Another contention is that the act is violative of the commerce clause of the Federal Constitution. The case is not one where the gasoline is brought from without the state into this state and here sold and delivered to customers in the original packages and in the same form and condition as when received. In other words, when taxed, the gasoline is no longer an article of commerce. The only contention is that it is not taxable because it is used solely in the operation of the ferry between Kentucky and Illinois, and therefore in interstate commerce. It is well settled that there is nothing in the Constitution or laws of the United States which prevents a state from taxing personal property employed in interstate or foreign commerce like other personal property within its jurisdiction. Delaware Railroad Tax, 85 U. S. (18 Wall.) 206, 232; 21 L. Ed. 888; Western U. Teleg. Co. v. Texas, 105 U. S. 460, 26 L. Ed. 1067; Gloucester Ferry Co. v. Pennsylvania, 114 U. S. 196, 5 S. Ct. 826, 29 L. Ed. 158; Western U. Teleg. Co. v. Attorney General, Massachusetts, 125 U. S. 530, 8 S. Ct. 961, 31 L. Ed. 790; Marye v. Baltimore & O. R. Co., 127 U. S. 117, 8 S. Ct. 1037, 32 L. Ed. 94; Leloup v. Port of Mobile, 127 U. S. 640, 8 S. Ct. 1383, 32 L. Ed. 311. Following this rule it was held in Pullman's Palace Car Co. v. Commonwealth of Pennsylvania, 141 U. S. 18, 11 S. Ct. 876, 35 L. Ed. 613, and also in Pullman's Palace Car Co. v. Hayward, 141 U. S. 36, 11 S. Ct. 883, 35 L. Ed. 621, that, where the cars of a company within a state are employed in interstate commerce, their being so employed does not exempt them from taxation by the state. In Maine v. Grand Trunk R. Co., 142 U. S. 217, 12 S. Ct. 121, 163, 35 L. Ed. 994, the United States Supreme Court upheld the validity of an excise tax imposed upon an interstate carrier for the privilege of exercising its franchise within the state of Maine. Furthermore, a state may impose a registration or license fee on those using motor vehicles in the state, although employed in interstate commerce, and may impose a reasonable charge for the use of its highways by motor vehicles so employed. Hendrick v. Maryland, 235 U. S. 610, 35 S. Ct. 140, 59 L. Ed. 385; Kane v. New Jersey, 242 U. S. 160, 37 S. Ct. 30, 61 L. Ed. 222. In view of these decisions, we are not prepared to say that the mere use of

property in interstate commerce places it beyond the state's power to tax it. The tax is the same on all gasoline whether used in intrastate or interstate commerce. The statute not being discriminatory, and there being no claim that the tax is unreasonable in amount, we are constrained to the view that the tax is not invalid as a direct or unfair burden on interstate commerce.

Judgment affirmed.