**NORTHERN PAC. RY. CO. v. HENNEFORD**
et al.
No. 4472.

District Court, E. D. Washington, N. D.
June 9, 1936.

L. B. daPonte, R. S. Macfarlane, and D. H. Eastman, all of Seattle, Wash., F. J. McKevitt, of Spokane, Wash., and A. N. Whitlock, of Seattle, Wash., for plaintiff Northern Pac. Ry. Co.

G. W. Hamilton, Atty. Gen., and R. G. Sharpe, Asst. Atty. Gen., for defendant.

Before HANEY, Circuit Judge, and WEBSTER and PRAY, District Judges.

WEBSTER, District Judge.

This is an action by the plaintiff railway company against the members of the Washington State Tax Commission to enjoin the enforcement as against the plaintiff, of what is called a "compensating tax," as defined and imposed by title 4, § 31 et seq., c. 180, p. 726, Session Laws 1935. Jurisdiction is predicated upon diversity of citizenship and the presence of federal questions. Upon stipulation of the parties, the case is now under final submission for all purposes upon the merits.

The pertinent facts are these: The plaintiff owns and operates a transcontinental system of railroad and is engaged in interstate and intrastate transportation as a common carrier of freight and passengers in the state of Washington. The system comprises 10,498 miles of operated track, of which 3,266 miles are in the state of Washington. In 1934 the operating revenue in Washington was approximately $13,368,674.15, of which $7,574,486.54 was from interstate business and $5,794,187.61 was from intrastate business. The exact figures for 1935 are not now available, but they will be approximately the same as those for 1934. In the necessary operation, maintenance, and repair of its railroad in Washington, the plaintiff purchases a large amount of materials, supplies, shop machinery, tools, etc., part of which it buys in Washington and part in other states. In the months of May and June, 1935, the period covered by this litigation, the plaintiff purchased in various states of the United States and in the Dominion of Canada a quantity of such property which it transported into the state of Washington to various points on its railroad for use in operating, maintaining, and repairing the railroad, which is used indiscriminately and inseparably by the plaintiff in interstate and intrastate commerce in the state of Washington. Property of this character upon its arrival in Washington is classified and taxed as operating property of the railway company pursu-

ant to section 1 (17), c. 123, pp. 356, 360, Session Laws 1935. Much of this property cannot be procured in the state of Washington and most of it is specially designed and all of it purchased for specific railroad purposes and is not practically adapted to any other use.

Chapter 180, title 4, § 31, p. 726, Laws 1935, reads:

"There is hereby levied and there shall be collected from every person in this state a tax or excise for the privilege of using within this state any article of tangible personal property purchased subsequent to April 30, 1935. Such tax shall be levied and collected in an amount equal to the purchase price paid by the taxpayer multiplied by the rate of 2%."

Section 35 of the act (page 727) provided that the "purchase price" shall mean the consideration paid to the seller, plus the actual cost of transportation from the place where the article was purchased to the person using the same in Washington. Chapter 180, title 3, section 16, of this same act (page 721) imposes a general sales tax as follows:

"From and after the first day of May, 1935, there is hereby levied and there shall be collected a tax on each retail sale in this state equal to two per cent of the selling price."

Section 32 of the act (page 726) provides that the compensating tax shall not apply in respect to the use of property, the sale or use of which has already been subjected to a tax equal to or in excess of that imposed by title 4, whether under the laws of this state or some other state of the United States. Section 33 of the act (page 727) provides:

"If any article of tangible personal property has already been subjected to a tax by this or any other state in respect to its sale or use in an amount less than the tax imposed by this title, the provisions of this title shall apply, but at a rate measured by the difference only between the rate herein fixed and the rate by which the previous tax upon the sale or use was computed."

A circular or pamphlet containing regulations for the enforcement of title 4, issued by the defendants as the state tax commission in October, 1935, contains this language:

"The primary purpose of the Compensating Tax is to protect the merchants of Washington from discrimination arising by reason of our inability, under Federal law, to impose a tax upon sales made to our residents by competitive merchants in other states."

In the absence of this frank declaration, it is plain from the law itself that such is its primary purpose.

In assailing title 4 of the act defining and imposing the compensating tax, counsel for plaintiff make two principal or primary contentions: (1) That if considered as a tax for the privilege of using the property indiscriminately and inseparably as instrumentalities of interstate and intrastate commerce, the law imposes directly an unjust and undue burden on interstate commerce in violation of the commerce clause of the Constitution of the United States (article 1, § 8, cl. 3), and (2) if considered as a tax attaching to the mere ownership of the property, the tax would be a property tax and not an excise and therefore void under the uniformity and equality clause of the Fourteenth Amendment to the Constitution of the state of Washington, and also under the Federal Constitution (Amendment 14). In Morrow v. Henneford et al., 182 Wash. 625, 47 P.(2d) 1016, the Supreme Court of Washington had before it an attack upon the general sales tax of the state as defined by title 3 of chapter 180, Laws 1935, p. 721, upon the ground, among others, that the tax imposed by the act is a direct property tax, lacking uniformity and equality and consequently in violation of both the State and Federal Constitutions. The validity of the tax was sustained upon the ground that the tax was an excise as distinguished from a property tax and as such excise was not obnoxious to either State or Federal Constitution. In the course of its opinion the court cited with approval and quoted copiously from Bromley v. McCaughn, 280 U.S. 124, 50 S.Ct. 46, 47, 74 L.Ed. 226, involving the validity of a tax imposed upon the transfer of property by gift. Instead of employing language of its own, the court elected to quote language from decided cases upon which it relied. Included in a quotation from Bromley v. McCaughn, supra, this language is found:

"While taxes levied upon or collected from persons because of their general ownership of property may be taken to be direct, Pollock v. Farmers' Loan & Trust Company, 157 U.S. 429, 15 S.Ct. 673, 39 L.Ed.

759; Id., 158 U.S. 601, 15 S.Ct. 912, 39 L. Ed. 1108, this court has consistently held, almost from the foundation of the government, that a tax imposed upon a particular use of property or the exercise of a single power over property incidental to ownership, is an excise which need not be apportioned. * * * It is a tax laid only upon the exercise of a single one of those powers incident to ownership, the power to give the property owned to another. Under this statute all the other rights and powers which collectively constitute property or ownership may be fully enjoyed free of the tax."

In Vancouver Oil Company v. Henneford et al., 183 Wash. 317, 49 P.(2d) 14, 16, the Supreme Court of Washington upheld the constitutionality of title 4 of the act as applied to the use of a motor vehicle and trailer purchased in Oregon, delivered at Vancouver, Wash., and there to be used solely in local intrastate business. Following Morrow v. Henneford, supra, the court upheld the act as an excise and not a property tax. The opinion did not undertake to alter or enlarge the distinction between an excise and a property tax as pointed out in the Morrow Case. Indeed there was no occasion to do so since the provisions of title 4 lay a tax solely upon the privilege of using within the state of Washington property purchased outside of the state, and in that case it was property for common use. With respect to the contention that title 4 was in violation of the commerce clause of the Constitution of the United States, the court said:

"With reference to the commerce clause of the Federal Constitution, it is well settled, of course, that the state, through its Legislature, has no power to restrict or regulate interstate commerce, or to impose a tax upon an article which would place a direct burden upon such commerce. A state tax, however, on merchandise brought into this state from another state, or upon its sales, whether in original packages or not, after it has reached its destination and is in a state of rest, is lawful, providing the tax does not work a discrimination against merchandise because of its origin in another state."

The only interstate characteristic of the transaction involved in that case was that the truck and trailer were purchased in Oregon and brought into the state of Washington. The property was never intended to be used, either in whole or in part, in interstate commerce. That case, therefore, manifestly is not authority for holding that the compensating tax, as defined and laid by title 4, is valid as applied to property purchased outside the state for the operation, maintenance, and repair of an interstate railroad and which is brought into the state for that sole and exclusive purpose. It is difficult to conceive how property so purchased and brought into the state to be so used can be said to come to a state of rest in the state and be commingled with the common property of the state in the period intervening its crossing the state boundary and before it is applied to the very purpose for which it was brought in. It seems quite plain that if title 4, as applied to the facts in this case, is to be upheld against attack based upon the commerce clause of the Federal Constitution, it must be so upon some other ground than that upon which it was upheld in the Vancouver Oil Company Case. And it is likewise equally apparent that the validity of title 4, as applied to the facts of this case, under the Federal Constitution, must be determined by this court basing its decision upon pertinent and applicable federal authorities. As we have already said, the tax in question is upon the privilege of using the property in the state of Washington. In this case what property is involved? Why, the property specially designed and purchased outside the state solely for the purpose of operating, maintaining, and repairing railroad facilities and instrumentalities used indiscriminately in both interstate and intrastate commerce and the privilege of using such property in the state of Washington is the thing attempted to be taxed, i. e., in this case the privilege of using the property in operating and maintaining a railroad engaged in large measure in carrying on an interstate transportation business. By the terms of title 4, property is not subject to the compensating tax until it is brought within the state and its use within the state is the thing upon which the tax is imposed. The question presented for decision, therefore, is: Can property so purchased and brought into the state and so used, or intended to be so used, be subjected to the compensating tax notwithstanding the commerce clause of the Constitution of the United States. That is to say, does title 4 of the Washington statute amount to an undue and unjust burden upon interstate commerce under the facts of this case, or is it mere-

ly a tax upon one of the incidents of the ownership of the property falling short of its use for interstate commerce purposes. The plaintiff insists that the point to be decided is governed by the class of cases of which Helson and Randolph v. Kentucky, 279 U.S. 245, 49 S.Ct. 279, 280, 73 L.Ed. 683, and Bingaman v. Golden Eagle Western Lines, Inc., 297 U.S. 626, 56 S.Ct. 624, 80 L.Ed. 928, are typical. Whilst the defendants contend the question is ruled by the class of cases of which Nashville, Chattanooga & St. Louis Railway Co. v. Wallace, 288 U.S. 249, 53 S.Ct. 345, 349, 77 L. Ed. 730, 87 A.L.R. 1191, and Edelman v. Boeing Air Transport, Inc., 289 U.S. 249, 53 S.Ct. 591, 592, 77 L.Ed. 1155, are examples. To decide which of these two classes of cases is applicable here is to determine this controversy. We shall therefore proceed immediately to a consideration of the cases.

Helson and Randolph v. Kentucky, supra, was an action brought by the commonwealth of Kentucky to recover a tax defined and imposed by a statute of that state, the pertinent parts of which are as follows:

"A State tax of three (3¢) cents per gallon is hereby imposed on all gasoline, as defined herein, sold in this Commonwealth at wholesale, as the words 'at wholesale' are hereinafter defined. * * * The words 'at wholesale,' as used in this act, shall be held and construed to mean and include any and all sales made for the purpose of resale or distribution or for use * * * and also to mean and include any person who shall purchase or obtain such gasoline without the State and sell or distribute or use the same within the State." Acts Ky. 1924, c. 120, § 1.

Helson and Randolph were engaged in operating a ferry boat on the Ohio river between Kentucky and Illinois. They engaged exclusively in interstate business. The motive power of the boat was created by the use of gasoline, all of which was purchased and delivered to them in the state of Illinois. Seventy-five per cent. of this gasoline was actually consumed within the state of Kentucky, but all of it in the making of interstate journeys. The tax in question was computed and imposed upon the use of gasoline so brought into the state and thus consumed therein. The constitutionality of the statute upon which the action was predicated was assailed upon the ground that it was in contravention of the commerce clause of the Federal Constitution. The Court of Appeals of Kentucky [Metropolis Ferry Co. v. Com., 225 Ky. 45, 7 S.W.(2d) 506], as did the Supreme Court of Washington in testing the validity of the Washington statute, held that the tax was not a property tax, but an excise and therefore the uniformity clause of the State Constitution was not violated. The sole question before the Supreme Court was whether the statute of Kentucky was repugnant to the commerce clause of the Constitution of the United States. Before proceeding to a decision of the question presented, the court took pains to lay down a number of well-established principles which we feel it would be wise to keep fresh in our minds in deciding this case. We shall, therefore, quote some of the more important ones:

"Regulation of interstate and foreign commerce is a matter committed exclusively to the control of Congress, and the rule is settled by innumerable decisions of this court, unnecessary to be cited that a state law which directly burdens such commerce by taxation or otherwise constitutes a regulation beyond the power of the state under the Constitution."

Again:

"The power vested in Congress to regulate commerce embraces within its control all the instrumentalities by which that commerce may be carried on."

And again:

"A state cannot 'lay a tax on interstate commerce in any form, whether by way of duties laid on the transportation of the subjects of that commerce, or on the receipts derived from that transportation, or on the occupation or business of carrying it on."

And still again:

"While a state has power to tax property having a situs within its limits, whether employed in interstate commerce or not, it cannot interfere with interstate commerce through the imposition of a tax which is, in effect, a tax for the privilege of transacting such commerce."

The court then discussed a number of cases illustrating the application of these principles. Passing then to the precise question before it, the court said:

"The statute here assailed clearly comes within the principle of these and numerous other decisions of like character which might be added. The tax is exacted as the

price of the privilege of using an instrumentality of interstate commerce. It reasonably cannot be distinguished from a tax for using a locomotive or a car employed in such commerce. A tax laid upon the use of the ferryboat, would present an exact parallel. And is not the fuel consumed in propelling the boat an instrumentality of commerce no less than the boat itself? A tax which falls directly upon the use of one of the means by which commerce is carried on directly burdens that commerce. If a tax cannot be laid by a state upon the interstate transportation of the subjects of commerce, as this Court definitely has held, it is little more than repetition to say that such a tax cannot be laid upon the use of a medium by which such transportation is effected. 'All restraints by exactions in the form of taxes upon such transportation, or upon acts necessary to its completion, are so many invasions of the exclusive power of Congress to regulate that portion of commerce between the States.' "

The latest expression of the Supreme Court upon this subject is found in Bingaman, Commiss'oner, v. Golden Eagle Western Lines, Inc., 297 U.S. 626, 56 S.Ct. 624, 80 L.Ed. 928, handed down on March 30, 1936. In that case the appellee corporation, organized under the laws of Delaware, was a common carrier operating a line of busses over the public highways of several states, including New Mexico, its business being limited to interstate transportation. It did no business in New Mexico and expressly disclaimed any intention of doing any such business in the future. Its busses are propelled by gasoline which is purchased in another state, placed in tanks attached to the busses, and transported and used exclusively in interstate commerce. A statute of New Mexico (Laws N.M.1933, c. 176, § 2) imposes an excise tax of 5 cents per gallon upon the sale and use of all gasoline and motor fuel. The statute (section 3) prohibits any "distributor" from importing, receiving, using, selling, or distributing any motor fuel unless such distributor is the holder of an uncanceled annual license issued by the state comptroller, for which a fee of $25 is exacted. A "distributor," as defined by the act (section 1), includes a corporation consuming and using in the state any motor fuel purchased in and brought from another state. The effect of the statute, says the court, is to compel a common carrier engaged exclusively in interstate transportation to pro-

cure a license as a "distributor" and pay an excise tax upon the use of motor fuel purchased in and brought from another state and used only in such transportation. Suit was brought against appellants, the state officials, to enjoin the threatened enforcement of the statute against the appellee on the ground that it constituted a regulation of interstate commerce in contravention of the commerce clause of the Federal Constitution. In the course of the opinion by Mr. Justice Sutherland it is said: "The case turns upon the question whether the pertinent statutory provisions exact a charge as compensation to the state for the use of its highways, or impose an excise tax for the use of an instrumentality of interstate commerce. If the former, the tax should be sustained; if the latter, it clearly contravenes the commerce clause and must be held bad. Helson and Randolph v. Kentucky, 279 U.S. 245, 49 S.Ct. 279, 73 L.Ed. 683, and cases cited."

The Supreme Court of New Mexico had held the tax to be an excise and not a property tax for the use of the highways and this holding, of course, was binding upon the federal courts. The opinion points out that the state court drew a sharp distinction between the excise tax on the sale and that on the use of gasoline, holding the first to be valid and the second to be repugnant to the commerce clause of the Federal Constitution as applied to an interstate carrier. The conclusion of the Supreme Court was that as applied to the appellee, an interstate carrier doing no intrastate business, the portion of the state statute exacting license fees for the use of gasoline purchased in and brought from another state is plainly invalid as imposing a direct burden upon interstate commerce. It is true that in both Helson and Randolph v. Kentucky, supra, and in Bingaman v. Golden Eagle Western Lines, Inc., supra, the parties sought to be charged with the excise tax were engaged exclusively in interstate commerce while, in the instant case, the railway company is engaged in both interstate and intrastate commerce. But inasmuch as the property here in question is to be used in the operation, maintenance, and repair of a railroad system devoted indiscriminately and inseparably to both interstate and intrastate commerce, it is not thought that the fact that the plaintiff is engaged in both classes of commerce marks any material distinction or calls for any different application to the principles laid

down in either class of the cases herein-before referred to. The case of Cooney, Governor, v. Mountain States T. & T. Co., 294 U.S. 384, 55 S.Ct. 477, 79 L.Ed. 934, and cases therein cited, seem to be conclusive on this point. In that case it was held that a state occupation tax on every corporation engaged in the business of operating or maintaining telephone lines and furnishing telephone service in the state, based on so much for each telephone instrument used, controlled, and operated by it in the conduct of such business, was a direct burden on interstate commerce, as applied to a company furnishing both kinds of service, interstate and intrastate, and employing the same facilities in both classes of service as integral parts of its system. Many cases are cited in the opinion supporting the conclusion reached.

We come now to a consideration of the case of Edelman v. Boeing Air Transport, supra, upon which the defendants place their chief reliance. That this case was not intended to overrule Helson and Randolph v. Kentucky, supra, is palpably manifest from the opinion itself. And that it did not have any such effect is made plain to the point of demonstration by the opinion of the court in the Bingaman Case, for that case was decided on the authority of the Helson and Randolph Case and this was on March 30, 1936, while the Edelman Case was decided on April 17, 1933. And it is interesting and enlightening to note that Mr. Justice Sutherland wrote the opinions in the Helson Case and in the Bingaman Case and concurred in the Edelman Case, whilst Mr. Justice Stone wrote the opinions in the Wallace Case and in the Edelman Case and concurred in the opinions in the Helson and Bingaman Cases. There must, therefore, be a substantial and material distinction between the Helson Case and the Bingaman Case on one hand, and the Edelman Case and the Wallace Case on the other. It is our task to discover that distinction, and in the light thereof determine which class of cases already referred to are to govern the case in hand. In the Edelman Case the respondent, a Washington corporation, operating airplanes in Wyoming, brought suit in the latter state to enjoin the collection of a state excise tax levied upon the use of gasoline by the respondent within the state, as a violation of the commerce clause of the Constitution. Respondent maintained an airplane service for the transportation in interstate commerce of passengers, mail and express, with airports at Cheyenne and Rock Springs. It purchased gasoline both within and without the state which it intermingled and stored in tanks at its two airports. It paid the tax in question without objection on all gasoline which it sold within the state at its airports or withdrew from the tanks for local use. Its contention was that the tax could not validly be applicable to the gasoline imported from outside the state, stored in tanks at its airports, and used for operating the interstate planes in which it was eventually consumed. The statute there under review (Laws Wyo.1929, Sp.Sess., c. 14, Amending Laws 1923, c. 73, § 3) levies a license tax of 4 cents per gallon on all gasoline used or sold in the state of Wyoming for domestic consumption and requires every "wholesaler" engaged in the sale or use of gasoline within the state to report to the state treasurer each month all the gasoline sold or used by him in the state and to pay the tax upon it. A "wholesaler" is defined (Laws Wyo.1923, c. 73, § 1) as any person (1) who imports or causes to be imported gasoline for sale in the state to the jobber or consumer, or to persons who in turn sell to the jobber or consumer, or (2) who produces, refines, manufactures, blends, or compounds gasoline in Wyoming for use, sale, or distribution in that state. In addition, the statute (chapter 14) provides that every person who shall use any gasoline in Wyoming upon which the tax has not been paid by any wholesaler in Wyoming shall render a like statement and pay a like tax. As the statute had been administratively construed and applied by the officers charged with its administration, the tax was not levied upon the consumption of gasoline in furnishing motive power for respondent's interstate planes. The tax was applied to the stored gasoline as it was withdrawn from the storage tanks at the airports and before it was placed in the planes. No tax was collected for gasoline consumed in respondent's planes, either on coming into the state or on going out. It was at the time of withdrawal alone that "use" was measured for the purpose of the tax. The stored gasoline was deemed to be used within the state and, therefore, subject to the tax when it was withdrawn from the tanks. Notwithstanding this administrative application and construction of the statute, respondent contended that, as the statute is written, the tax is one on the consumption of gasoline in propelling

its airplanes in interstate commerce and, therefore, invalid under the authority of the Helson Case. The court held that as the statute was actually being construed and applied it was identical with the statute sustained by the court in Nashville, Chattanooga & St. Louis Railway Co. v. Wallace, supra. The Tennessee statute (Pub.Acts Tenn.1923, c. 58, § 3, as amended by Pub.Acts 1925, c. 67, § 2) under review in the Wallace Case was a privilege tax on gasoline and contained this significant language: "The tax imposed by this Act shall apply to persons, firms, or corporations, dealers or distributors, storing any of the products mentioned in this Act [gasoline], and distributing the same, or allowing the same to be withdrawn from storage, whether such withdrawal be for sale or other use." The court in the Wallace Case said: "Storage of the gasoline and withdrawal of it from storage within the state for use or sale are, as the state Supreme Court has held, the events which, by the very terms of the statute, call it into operation." Inasmuch, therefore, as the administrative officers of Wyoming were so construing and applying the statute as to cover merely the storage and withdrawing from storage, the court in the Edelman Case construed the statute as though by its terms it had been so restricted. In the course of the opinion Mr. Justice Stone said:

"A state may validly tax the 'use' to which gasoline is put in withdrawing it from storage within the state, and placing it in the tanks of the planes, notwithstanding that its ultimate function is to generate motive power for carrying on interstate commerce. Such a tax cannot be distinguished from that considered and upheld in Nashville, Chattanooga & St. Louis Ry. v. Wallace, supra. There it was pointed out that 'there can be no valid objection to the taxation of the exercise of any right or power incident to * * * ownership of the gasoline, which falls short of a tax directly imposed on its use in interstate commerce, deemed forbidden in Helson v. Kentucky, 279 U.S. 245, 49 S.Ct. 279, 73 L.Ed. 683.' As the exercise of the powers taxed, the storage and withdrawal from storage of the gasoline, was complete before interstate commerce began, it was held that the burden of the tax was too indirect and remote from the function of interstate commerce, to transgress constitutional limitations.

"Despite the fact that the statute as applied is identical in operation with that sustained in Nashville, Chattanooga & St. Louis Ry. v. Wallace, supra, respondent contends that as the statute is written, the tax is one on the consumption of gasoline in propelling its airplanes in interstate commerce, invalid under Helson v. Kentucky, supra. In that case a Kentucky statute taxing the use of gasoline was applied to that purchased and placed in the tanks of a ferry boat outside the state for use in operating it in interstate commerce. The tax, which was levied only with respect to the gasoline consumed while the ferry boat was within the state, was held to be invalid as, in effect, a direct tax on the privilege of carrying on interstate commerce.

"But the officers of Wyoming, charged with the enforcement of the taxing statute, are giving no such application to it as was given to that in Helson v. Kentucky, supra, and it is not suggested that they will. All that has been done or threatened by them, under their interpretation of the statute, infringes no constitutional right of the complainant. In the circumstances, no case is presented, either by pleadings or proof, calling on a federal court of equity to rule upon the correctness of some other construction which may never be adopted by the state administrative officials or by the state courts."

The thought underlying the language used in the last two sentences of the last foregoing quotation is that a court of equity will not interfere in behalf of a complainant whose rights have not been violated or threatened and that no court will undertake to decide hypothetical cases which may never arise. Taking the opinion as a whole, it is crystal clear that but for the administrative construction and application of the statute by the state officials in applying its provisions to the complainant, the Wyoming statute would have been held bad as unconstitutional under the authority of Helson v. Kentucky. Since as actually construed and applied, the tax was upon one only of the incidents of ownership of property, viz., its withdrawal from storage, the case, in practical effect, was the same as that presented under the statute involved in Nashville, Chattanooga & St. Louis Ry. Co. v. Wallace, supra, the court treated the Wyoming statute as though it had been worded precisely as it had been construed and enforced by the

administrative officers, and refused to speculate upon what might be done in the future for the reason that no case presenting such imaginary construction or application had been made either by pleadings or proof, and no threat to change the administrative construction of the act had been made. The whole effect of the opinion in the Edelman Case is that the actual and practical application of the statute to the complainant saved the statute from vulnerability to constitutional attack, because as so applied and construed no constitutional right of the complainant had been invaded, and as there was no threat to apply the statute in any other way the court confined itself to the manner of its past actual application and construction. The plain inference to be drawn from the Edelman Case is that if the statute had been construed as it was written instead of as it had been applied to the complainant in that case it would have been obnoxious to the commerce clause of the Federal Constitution.

Now let us see what has been the actual application and construction of the Washington statute by the state tax commission, the administrative officials charged with its enforcement. Does their application or construction of the statute meet the rule laid down in the Edelman Case and come within the decision of that case? On October 11, 1935, and before this action was commenced, the state tax commission put out regulations in the form of a pamphlet or circular with respect to the enforcement of the compensating tax. In that circular this language is found:

"Tax liability imposed under the Compensating Tax arises at the time the property purchased is put to use in this state. Property is put to use by the first act after delivery is completed within the state by which the article purchased is actually used or is made available for use with intent, actually to use such property within the state. The term 'made available for use' means and includes the exercise of any right or power over tangible personal property preparatory to actual use within the state, such as keeping, storing, withdrawing from storage, moving, installing or performing any act by which dominion or control over the property is assumed by the purchaser."

Can it be said that this definition or construction of the term "use" by the Washington officials makes this statute, for prac-

tical purposes, identical with the statute upheld in Nashville, Chattanooga & St. Louis Ry. v. Wallace, supra? Does this definition of the term "use" square with the following language found in the Wallace Case: "There can be no valid objection to the taxation of the exercise of any right or power incident to appellant's ownership of the gasoline, which falls short of a tax directly imposed on its use in interstate commerce"? On the contrary, does it not fall squarely within the following language found in the case of Bromley v. McCaughn, supra, relied upon by the Supreme Court of Washington in the Morrow Case: "Taxes levied upon or collected from persons because of their general ownership of property may be taken to be direct."

The attempted construction of title 4 by the tax commission includes in the word "use" any and every "act by which dominion or control over the property is assumed by the purchaser." The language employed includes not one such incident of ownership, such as withdrawing gasoline from storage, but every possible or conceivable act amounting to dominion and control over property and every conceivable exercise of authority incident to the ownership of property. Can this definition be so distorted that it will meet this language in the Bromley Case: "It is a tax laid only upon the exercise of a single one of those powers incident to ownership * * * all the other rights and powers which collectively constitute property or ownership may be fully enjoyed free of the tax"?

It seems to us very clear that the construction of title 4 of the act by the tax commission if valid removes this case completely from the law as declared and applied in the Edelman Case. Under that construction the doing of anything which the railway company may do because of or arising out of its ownership of the property brought into the state ipso facto subjects such property to the tax. Instead of the administrative construction and application of the statute in this case saving the act from constitutional invalidity, it seals its doom by making title 4 a direct tax upon the ownership or use of instrumentalities of interstate commerce and, therefore, an undue and unjust burden upon such commerce. On the other hand, if the construction attempted to be placed upon the statute is beyond the power of the tax com-

mission and therefore void, then there has been no administrative construction of the act and it must stand or fall as it is written. Nor is this construction of the statute by the tax commission purely academic. On January 13, 1936, the tax commission addressed a communication to the Northern Pacific Railway Company in which it made demand on the company for the compensating tax due on the property purchased by the company at retail and used within the state of Washington during the months of May and June, 1935, the very tax covered by this litigation, and also demanded of the company that it pay the tax upon all property purchased subsequently during the year 1935, and in the communication quoted the definition of the term "use" in the exact language we have already quoted it, as the basis of its demand against the company. In the face of this will any one contend that there is no action threatened against the plaintiff violating its constitutional rights as was the case in Edelman v. Boeing Air Transport? Nor can it be said that no case is presented by the pleadings or proof calling upon the court to rule upon some construction which might be placed upon the statute by the state authorities as was the case in Edelman v. Boeing Air Transport. The controversy here is one by which the rights of the plaintiff are seriously and immediately threatened, not by some construction which the commission might never place upon the statute, but upon the very construction of it which they are attempting to apply to the plaintiff's rights in this case. Let it not be forgotten that the tax commission did not attempt to place its interpretation upon title 4 of the act until long after the rendition of the decisions of the Supreme Court of Washington in the Morrow Case and the Vancouver Oil Company Case. In those cases the statute was defended and construed as written, and, as so construed, was held to be constitutional under the equality and uniformity provisions contained in the Fourteenth Amendment to the Constitution of the state of Washington. As written, the compensating tax levied by title 4 of the act was held not to be a property tax but an excise and, therefore, not within the equality and uniformity clause of the State Constitution. If the manner of construction and application of the Wyoming statute under review in the Edelman Case served to save that statute from successful attack upon constitutional grounds, by the same token the attempt of the tax commis-

sion of Washington to construe, or rather to amend, the Washington law and enforce it as so construed or amended against the plaintiff clearly renders the statute here involved invalid under the Constitution of the state of Washington. The construction attempted to be so placed on title 4 of the act plainly makes that portion of the statute a property tax and not an excise because it covers every conceivable attribute incident to ownership of property. The Supreme Court of Washington has never been called upon to pass upon the tax commissioners' interpretation of title 4. At the time it decided the Morrow Case and the Vancouver Oil Company Case, the commission had placed no construction of its own upon the statute. If title 4 of the act had been worded by the state Legislature which enacted it, in the precise language employed by the tax commission in its attempt to construe and apply the statute, would any one seriously contend that title 4 imposed an excise as distinguished from a property tax in the face of the fact that every attribute and incident of property and its ownership would be covered by the statute. It will not do to defend the statute against the charge of invalidity under the State Constitution by construing the act as it is written and then in an effort to enforce the act and to bring cases of the character such as the one here in hand within the scope of what is thought to be a favorable decision of the Supreme Court of the United States undertake to place its own administrative interpretation upon the statute which renders it undeniably void as repugnant to the Constitution of Washington, to say nothing of the Constitution of the United States.

Furthermore, it is not within the province of an administrative body to exercise judicial functions. The power conferred upon the tax commission to make regulations for the enforcement of the statute is limited to making regulations not inconsistent with the act. Surely the commission has no power to amend the statute. Inasmuch, therefore, as the definition attempted to be placed upon the act by the tax commission is palpably inconsistent with the act as construed by the Supreme Court of Washington, as well as with the Constitution of the state of Washington, its definition or construction must be rejected and the statute be construed as written, that is to say, the imposition of an

excise tax upon the privilege of using the property within the state, and as applied to this case, "the price of the privilege of using an instrumentality of interstate commerce."

Our conclusion is that this case is governed by the principles laid down in Helson v. Kentucky, supra, and Bingaman v. Western Lines Inc., supra, and kindred cases holding to the same effect and, hence, that title 4 of the act in question, as applied to the facts of this case, is unconstitutional and void.

Since the case is now before the court on both the application for temporary injunction and for a permanent injunction, a temporary injunction as prayed for will be granted and simultaneously be made permanent. Decree accordingly will be entered in due course.

### Supplemental Opinion.

Since the preparation of the majority opinion of the court by the writer and its submission to the other members of the court for their consideration, which was on May 2, 1936, the Supreme Court of the United States has handed down two opinions dealing with the underlying principles involved in the instant case, and which clearly support the views and conclusions of the original opinion.

On May 18, 1936, the Supreme Court decided the case of Graves, Governor, et al., Appellants, v. Texas Company, 56 S. Ct. 818, 822, 80 L.Ed. ——. This case had to do with gasoline stored and withdrawn from storage, some of which had been sold to the United States. The question involved was whether an excise tax of the state of Alabama was unconstitutional because in violation of the inhibition against any state laying a tax against the United States. In the course of the opinion written by Mr. Justice Butler this language is found:

"But, assuming that, by the acts under consideration the state meant to tax mere storing, that purpose cannot be given effect in respect of the company's sales and deliveries to the United States without infringing the constitutional principle which safeguards the federal government against state taxation. Plainly, the sales and deliveries by the company to the United States necessarily include storing and withdrawal from storage. A tax upon anything so essential to the sale of the gasoline to the United States is as objectionable as

would be a tax upon the sale itself. The validity of the tax is to be determined by the practical effect of enforcement. To apply any other test of constitutionality would be to treat 'a prohibition, which is general, as if it were confined to a particular mode of doing the forbidden thing.' Brown v. Maryland, 12 Wheat. 419, 444, 6 L.Ed. 678. As held in the Panhandle Case (277 U.S. 218, at page 222, 48 S.Ct. 451, 452, 72 L.Ed. 857, 56 A.L.R. 583): 'A charge at the prescribed rate is made on account of every gallon acquired by the United States. It is immaterial that the seller and not the purchaser is required to report and make payment to the State. * * * The amount of money claimed by the State rises and falls precisely as does the quantity of gasoline so secured by the government. It depends immediately upon the number of gallons.' So far as concerns the federal immunity from state taxation, a tax upon storing or withdrawal so involved cannot be distinguished from the tax on sales imposed by the Mississippi statute condemned as unconstitutional."

Mr. Justice Cardozo wrote a dissenting opinion relying chiefly upon the Edelman and the Wallace Cases. It is plain, therefore, that these cases were before the court when the majority opinion was delivered.

In the Graves Case the gasoline was sold to others than the United States and was also used in other ways. It would seem to the majority of the court that a tax on withdrawal is much more indirect and remote when applied to such gasoline than would be one on the storing or withdrawal from storage of articles constituting interstate railroad equipment and hence instrumentalities of interstate commerce. If a tax upon storing and withdrawing from storage is so immediate as to render the tax an imposition upon the sale of a commodity, then the laying of a like tax upon the storing or withdrawing from storage of gasoline used in interstate commerce is a tax upon the use of that property. The fact that the Graves Case was dealing with one portion of the Constitution of the United States and the instant case deals with another portion thereof certainly calls for no distinction with respect to the principle announced and applied in that case.

On the same day that the Graves Case was decided the Supreme Court handed down an opinion in Premier-Pabst Sales

Company, appellant, v. Walter T. Grosscup et al., 56 S.Ct. 754, 755, 80 L.Ed. ——. That case was one involving the question whether a state tax was obnoxious to the Federal Constitution. In the course of the opinion Mr. Justice Brandeis makes this statement: "One who would strike down a state statute as obnoxious to the Federal Constitution must show that the alleged unconstitutional feature injures him." This is a succinct statement of the principle referred to in the original majority opinion as one of the reasons for the decision in the Edelman Case.

 Furthermore, the demand made by the state tax commission on the plaintiff railroad company, bearing date January 13, 1936, in part reads as follows:

"The tax commission of the State of Washington has been advised that during the months of May and June, 1935, the Northern Pacific Railway Company purchased at retail and used within this state certain articles of tangible personal property, the sale of which had not already been subjected to a tax by this or any other state, equal to 2% of the purchase price thereof or to any tax whatsoever, the purchase price of which articles was greatly in excess of $20.00 for purchases made during each of said months.

"Demand is hereby made upon the Northern Pacific Railway Company to pay to the tax commission of the State of Washington on or before February 15, 1936, an amount equal to the total purchase price paid for such articles multiplied by the rate of 2% as compensating tax due and payable to the State of Washington as provided by Title IV of Chapter 180 of the Laws of 1935 of the said State of Washington.

"Demand is also hereby made upon the said Northern Pacific Railway Company to pay on or before the said February 15, 1936, a like tax upon all articles of tangible personal property purchased at retail during the months of July to December, inclusive, in the year 1935, and used by it in the State of Washington, the sale or use of which had not already been subjected to a tax by this or any other state, equal to 2% of the purchase price thereof."

From this demand it will be seen that no distinction is made between general or actual use of the property and the incidental use of storing and withdrawing from storage any of the property sought to be taxed. The demand is plain and specific for the payment of the tax upon all property purchased at retail outside the state and used within the state upon which a tax had not already been paid to this or to some other state. How in the light of such a demand any presumption is to be indulged that it is the purpose of the tax commission to exact the tax only in respect of property which has been stored or withdrawn from storage is difficult to understand. Presumptions of fact are only indulged in the absence of the fact or facts presumed and arise out of inference from collateral facts admitted or otherwise satisfactorily established. Such presumptions are not permissible in the face of positive facts absolutely inconsistent with the fact presumed. But even though the presumed intention is the actual intention of the commission in face of its explicit demand to the contrary, what answer is to be made to the Graves Case?

For the reasons stated in the original majority opinion, supplemented by these additional views, a majority of the court adhere to the conclusions originally reached.

HANEY, Circuit Judge (dissenting).

I believe the rules of law governing this case to be comparatively simple. The question is whether or not the "use" tax, imposed by the Washington statute on the personal property purchased by complainant outside that state, transported into and stored within that state, and later consumed in maintaining its railroad, which engages in both intrastate and interstate commerce, is a direct burden on interstate commerce. If such taxes are burdens on interstate commerce, then they are invalid because they are forms of attempts to regulate interstate commerce,[1] such regulation being reposed exclusively in Congress by the Constitution.

When is such a "use" tax a direct burden on interstate commerce? The cases which seem to be directly controlling appear generally to relate to gasoline. If "consumption" of gasoline in interstate commerce is the use which is taxed, then the tax is a direct burden on interstate commerce. Helson and Randolph v. Ken-

---

[1] United States Exp. Co. v. Minnesota, 223 U.S. 335, 342, 32 S.Ct. 211, 56 L.Ed. 459; Baltic Min. Co. v. Massachusetts, 231 U.S. 68, 82, 34 S.Ct. 15, 58 L.Ed. 127.

tucky, 279 U.S. 245, 49 S.Ct. 279, 73 L.Ed. 683; Bingaman v. Golden Eagle Western Lines, Inc., 297 U.S. 626, 56 S.Ct. 624, 80 L. Ed. 928, decided by the Supreme Court March 30, 1936.

On the other hand, where a "tax is imposed on the successive exercise of * * * storage and withdrawal from storage of the gasoline" and "both powers are completely exercised before use of the gasoline in interstate commerce begins," then it is held that "the tax imposed upon their exercise is therefore not one imposed on the use of the gasoline as an instrument of commerce, and the burden of it is too indirect and remote from the function of interstate commerce itself to transgress constitutional limitations." Nashville, C. & St. L. R. Co. v. Wallace, 288 U.S. 249, 268, 53 S.Ct. 345, 350, 77 L.Ed. 730, 87 A. L.R. 1191. Likewise it is held that "a state may validly tax the 'use' to which gasoline is put in withdrawing it from storage within the state, and placing it in the tanks of the planes, notwithstanding that its ultimate function is to generate motive power for carrying on interstate commerce." Edelman v. Boeing Air Transport, 289 U.S. 249, 53 S.Ct. 591, 592, 77 L.Ed. 1155.

I see little difference between the facts appearing in the Edelman Case and the facts appearing in the instant case. This, together with the striking similarity with respect to the Wyoming legislative act and the legislative act involved herein, impels me to the conclusion that the decision in the Edelman Case is controlling herein.

The statute here in question levies a tax on "the privilege of using within" the state tangible personal property. As the statute stands, the "use" taxed might be the actual consumption of the articles, or it might be the storage and withdrawal of the articles, or the withdrawal alone. The mere fact that the tax might be levied on one use, and because thereof be invalid, does not make the statute at once invalid.

To determine which of the particular uses is being taxed, we must look to the administrative construction and application, as was done in the Edelman Case.

The administrative construction by the Washington tax commission is quoted in the majority opinion. That general statement is a construction applicable to all users whether carriers or otherwise. The same statement is contained in the letter directed by the commission to complainant, demanding payment of the tax. This general statement shows that the "privilege of using" means either (1) actual consumption or (2) the act of making available for use. The commission construed this second act to be (a) keeping; (b) storing; (c) withdrawing from storage; (d) moving; (e) installing or performing any act by which dominion or control over the property is assumed by the purchaser.

As declared by the Washington tax commission, this is a general statement, and it does not say specifically, on what "use" the tax is exacted. In the same administrative circular is the statement:

"The Tax Does Not Apply in Respect to the Use of: * * * (2) Rolling stock or floating equipment by a common carrier, the first use of which within the state is actual use in conducting interstate or foreign commerce. * * *"

It might well be said that such provision negatives an intent to tax a "use" which is only the equivalent of consumption.

However, the Supreme Court has said many times that a statute is presumed to be valid. Graves v. Minnesota, 272 U.S. 425, 47 S.Ct. 122, 71 L.Ed. 331. We must presume, therefore, that the tax is exacted on the use of "storage and withdrawal" or "withdrawal from storage." I find nothing either in the pleadings or the stipulation which overcomes this presumption, and therefore I dissent from the conclusion of the majority holding that the tax is invalid.